TENNESSEE EASTERN ELECTRIC COMPANY *v.* HARVEY H.
HANNAH, COMMISSIONER, *et al.*

(*Knoxville.* September Term, 1928.)

Opinion filed December 22, 1928.

### 1. APPEAL. LAW OF THE CASE.

The ruling of the chancellor unappealed from that complainant
utility must procure the issuance of a certificate of necessity and
convenience before proceeding becomes the law of the case.
(Post, p. 586.)

### 2. CHANCERY COURT JURISDICTION. UTILITIES COMMISSION.

The chancery court has jurisdiction to review the exercise of
power by the Utilities Commission in the making of rules for the
future, with which utility companies must comply or lose valuable
rights, same being a legislative function, not a decision of any
controversy arising under its rules. (Post, p. 586.)

Citing: In re Cumberland Power Co., 147 Tenn. (20 Thomp.), 509,
511.

### 3. CHANCERY COURT JURISDICTION. DECLARATORY JUDGMENT. ACTUAL CONTROVERSY. REAL CONTRADICTOR. LIBERAL INTERPRETATION.

The chancery court has jurisdiction to entertain an action for a
declaratory judgment where Utilities Commission is attempting to
enforce rules which will have the effect to deprive the utility
of valuable property rights; thus an actual controversy is pre-
sented. The Utilities Commission, represented by the Attorney-
General, seeking to enforce the rule, affords a real contradictor.
The Court is committed to a liberal interpretation of the Uniform
Declaratory Judgment Act. (Post, p. 586.)

Citing: Uniform Declaratory Judgment Act, Acts of 1923, Chap.
27 (Shannon's Code Supplement, 4726a1-4726a16); Hodges v.
Hamblen Co., 152 Tenn. (25 Thomp.), 395.

### 4. UTILITIES COMMISSION. POWER. RULES.

The Utilities Commission is without power to require a utility to surrender valuable property rights as a condition to make application for certificate of convenience or to do things which the law authorizes the Commission to regulate, in advance of granting the certificate by rules, to-wit: (a) that the applicant will not embrace in its base rate of charges the water power value as separate from that of the land itself; (b) that the applicant shall pay to the State not less than one mill per KWH; (c) grant to the State the right of recapture. (Post, p. 587.)

### 5. UTILITIES.     FRANCHISE.     UTILITIES     COMMISSION. POWER.

The right (privilege and franchise) of a water and electric light, heating and water power company, to do business in the State is not derived from the Commission, but is conferred by statute. (Post, p. 588.)

Citing: Thompson's-Shannon's Code, sec. 2545 et seq. (1877, chap. 31; 1891, chap. 122; 1895, chap. 81); Thompson's-Shannon's Code, sec. 2489a1, et seq. (1909, chap. 127.)

### 6. UTILITIES COMMISSION. JURISDICTION. PUBLIC UTILITIES.

The public utilities over which the Commission has jurisdiction are those operating under privileges, franchises, licenses, or agreements "heretofore granted or hereafter to be granted," and such public utilities may not exercise these franchises without the approval of the Commission, but such approval may not be withheld except after hearing. (Post, p. 589.)

Citing: Acts of 1919, chap. 49.

### 7. UTILITIES COMMISSION. POWER. PUBLIC UTILITIES.

The Commission has power, after hearing, as a prerequisite of its approval for the exercise of the privileges and franchise of power company, to impose conditions as to construction, equipment, maintenance, service or operation . . . the primary purpose being to promote public comfort and safety. Rules (c), (f) and (h), above set forth as (a), (b) and (c), are not conditions of this class, but are designed to serve the pecuniary interest of the public. Expressed authority for their imposition is not given by the statute. (Post, p. 589.)

8. **UTILITIES COMMISSION. POWER. RULES.**

The Utilities Commission has the implied power, after it determines that a privilege is necessary and proper for the public convenience and conserves the public interest, to withhold its approval of the privilege or franchise until the public interest is conserved, and is authorized to impose upon the public utility conditions of the "tendency" of rules such as specified above under (a), (b) and (c). Whether these rules,. or precisely what rules the Commission may impose as conditions, fall within this "tendency" for the exercise of such a privilege or franchise, after hearing, the Court does not decide further than that these particular rules cannot be imposed before a hearing. (Post, p. 590.)

---

### FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —HON. JOHN R. AUST, Chancellor.

ALFRED A. GILLETTE, COX & TAYLOR and CORNELIUS & WADE, complainant for Power Company, appellee.

ROBERTS & ROBERTS and ROY H. BEELER, Assistant Attorney-General, for defendant, appellant.

MR. JUSTICE ALEXANDER W. CHAMBLISS delivered the opinion of the Court.

Complainant is a public service corporation, chartered in Massachusetts and domesticated in Tennessee, owning and operating hydroelectric plants in upper east Tennessee and supplying electricity in that section of the State. The defendant Railroad & Public Utilities Commission, having issued a citation to the complainant to appear and show cause why a certificate of necessity and convenience should be issued to it to make certain

developments in the Holston River, this bill was filed challenging the jurisdiction of the Commission to require complainant to apply for a certificate of necessity and convenience, and challenging also the validity of provisions incorporated by the Commission in the forms promulgated by it, and required by its order to be agreed to by the applicant as a condition precedent of the consideration by the Commission of any application by complainant for said certificate. A declaratory judgment was sought defining the rights of the parties, and as a basis of the asserted right to such a judgment it was alleged that application for a permit, or permits, by complainant was pending before the Federal Water Powers Commission, essential to the proposed projects for development of water power; that valuable rights were involved; that favorable action by the Federal Water Power Commission was dependent upon the obtaining of certain preliminary evidences of approval from the proper State authorities; and that the initial conditions imposed by the form of application proposed and required by the defendant Commission were arbitrary and unreasonable and exacted the relinquishment in advance of constitutional rights.

The Chancellor sustained a demurrer filed by the Commission in so far as it went to the right of the Commission to issue, and the obligation of the complainant to obtain, a certificate of necessity and convenience as a condition of proceeding with the power developments proposed; but he was of opinion that the making of the rules and regulations challenged was a legislative rather than judicial function, and therefore subject to review in his Court, and, holding the case a proper one for a declaratory judgment, proceeded to pass upon and ad-

judge with respect to the various provisions of the form promulgated by the Commission. He found certain of the rules properly subject to objection as unreasonable and beyond the power of the Commission to promulgate.

*(1)* The Chancellor held that the Commission was within its jurisdiction in exacting that the complainant must procure the issuance of a certificate of necessity and convenience before proceeding, and that holding was not appealed from and is now the law of the case. The appellants insist (1) that the chancery court was without jurisdiction, the remedy being exclusively by *certiorari* in a court of law; (2) that no case for a declaratory judgment is presented, both because there is no sufficiently matured controversy, in that complainant had not obtained essential preliminary grants from the Federal Government, and for lack of a contradictor; and (3) that the Chancellor was in error in his holding as to three rules adjudged by him to be unreasonable and invalid. The substance of these will be hereinafter stated.

*(2)* Without elaborate discussion, we are of opinion that the Chancellor was correct in holding, both that the chancery court had jurisdiction, and that a case for a declaratory judgment was fairly made. *In re Cumberland Power Co.,* 147 Tenn., 509-511, is authority for the first proposition. That which is sought to be reviewed in this proceeding is the power exercised by the Commission making rules for the future, which is a legislative function, not a decision of any controversies arising under its rules, which is a judicial, or semi-judicial, function.

*(3)* Nor can we say that the Chancellor has gone beyond the limits of his discretionary power in holding the case presented to be the proper subject of a declaratory

judgment. "This Court is committed to a liberal interpretation of the Declaratory Judgment Act." *Hodges* v. *Hamblen County*, 152 Tenn., 395. His holding that the Commission had the power to require the complainant to obtain from it a certificate is unappealed from. We think the necessity for the obtaining of a certificate in order that it might proceed with the proposed developments was made sufficiently to appear. It was fairly shown that the developments projected could not be proceeded with in compliance with Federal requirements until State authority had been obtained. Complainant was confronted with the alternative of making application for this certificate on the conditions exacted by the rules promulgated by the Commission, which it was alleged exacted in advance the surrender of valuable property rights as a condition—or of abandoning at great sacrifice its project. And the Commission, whose rules were challenged, represented by the Attorney-General, seems to us to be a proper contradictor, so that the controversy was actual, with a real party defendant. Parties representing real interests were thus arrayed on both sides of a substantial controversy.

*(4)* We come now to consider the opinion announced by the Chancellor with respect to the three rules or regulations as to which his judgment is here challenged.

These rules, lettered in the Commission's regulations (c), (f) and (h), embrace matters thus stated in the brief of learned counsel for the appellants, complained of in their last three assignments of error:

"(a)   Can the Commission legally say at the time of the application for a certificate of convenience and necessity that water power value, as separate and distinct from the value of the lands and structures thereon, shall

not be embraced within the rate base? In other words, that 'water power value,' as separate and distinct from the value of the land itself, shall not be embraced within the rate base.''

''(b)   Can the Commission legally say that the applicant for a certificate shall pay to the State of· Tennessee not less than one mill per KWH of electricity generated by the hydroelectric development for which he secures a certificate?''

''(c)   Can the Commission say that the State reserves the right of recapture at the expiration of fifty years on the terms set out in the certificate of convenience and necessity?''

It will be borne in mind that these rules require, as a condition precedent to the consideration by the Commission of an application for a certificate of necessity and convenience, that the applicant agree *in advance,* (c) to the fixing of a basis for future determination of values and rates involving valuable rights, (f) to the payment of a certain fixed charge, and (h) to such rights of recapture after fifty years by the State as the certificate when issued may prescribe. By this requirement of an advance or preliminary agreement by the applicant against its interest, and waiving or conceding its valuable rights, the applicant was deprived of all opportunity for a hearing before the Commission, or otherwise, or elsewhere—of its day in that, or any other court.

*(5)*   The right of a water and electric light, heat and water power company to do business in Tennessee and in the towns and counties thereof—its privileges or franchise—does not come from the Railroad and Public Utilities Commission. Such privilege or franchise is conferred and the terms stated by the provisions of the stat-

utes contained in Thompson's-Shannon's Code, section 2489a, et seq. If the Company is a foreign corporation, such privilege or franchise is derived from the statutes just cited and from those carried into Thompson's-Shannon's Code at section 2545, et seq.

*(6)* Section 3 of chapter 49 of the Acts of 1919, defines public utilities, over which the Commission is given jurisdiction, as those operating "under privileges, franchises, licenses or agreements, heretofore granted, or hereafter to be granted, by the State of Tennessee, or by any political subdivision thereof."

Having obtained its privilege or franchise under the foregoing statutes, the public utility is confronted by section 7 of chapter 49 of the Acts of 1919, containing the following:

"That no privilege or franchise hereafter granted to any public utility as herein defined by the State of Tennessee or by any political subdivision thereof shall be valid until approved by said Commission such approval to be given when, after hearing, said Commission determines that such privilege or franchise is necessary and proper for the public convenience and properly conserves the public interest, and the Commission shall have power, if it so approves, to impose such conditions as to construction, equipment, maintenance, service or operation as the public convenience and interest may reasonably require; . . ."

*(7)* By this section, the Commission is given power, *after* hearing, to directly impose, as a prerequisite to its approval of the privilege or franchise, conditions as to the construction, equipment, maintenance, service or operation. The primary purpose of these requirements is to promote the public comfort and safety. Rules (c), (f)

and (h) are obviously not conditions of this class but are designed to serve the pecuniary interest of the public. Expressed authority for their imposition is not to be found in the statutes setting up the Railroad and Public Utilities Commission.

*(8)* Nevertheless, by section 7, *supra,* the Commission is given power, *after hearing,* to approve a privilege or franchise, if the Commission determines such privilege or franchise is necessary and proper for the public convenience and properly conserves the public interest. It would seem that the implied power to withhold its approval of the privilege or franchise *until the public interest is properly conserved,* authorizes the Commission indirectly to impose upon the public utility conditions of the tendency of rules (c), (f) and (h). Just what conditions the Commission may impose, directly or indirectly, upon the exercise of such a privilege or franchise we are not called upon to declare in this case. Section 7 provides for a hearing before a privilege or franchise may be approved or disapproved, and we are satisfied the Commission is without power to enact, in advance of a hearing, such obligations as are contained in rules (c), (f) and (h).

The Chancellor was of opinion that all three of these rules were unreasonable and unenforceable for reasons ably set forth by him. Whatever may be said as to the merits of the questions arising thereunder, and the rights of the State and powers of the Commission, it seems clear to us that it is unreasonable to require that an applicant shall in advance and without a hearing commit itself irretrievably with regard thereto. We deem it sufficient for the present situation to adjudge with respect to the right of the Commission to exact *in advance* agreements

from the applicant touching these matters, leaving open for future disposition, first by the Commission itself, and then by the courts, if review is sought, such issues as may arise. We are of opinion therefore that the said rules and regulations should be so amended as to permit the filing of an application, and its consideration by the Board, without an exaction of the waiver agreements now provided for thereby.

With the modification indicated, the decree of the Chancellor is affirmed.