No. 29,070.

THE GARDEN CITY NEWS, J. E. BUSENBARK and FRANK L. STOWELL, Copartners and Publishers, *Appellants*, v. A. HURST, *Appellee*.

(282 Pac. 720.)

Opinion filed December 7, 1929.

*A. Schulman,* of Garden City, for the appellants.

*R. W. Hoskinson,* of Garden City, for the appellee.

*H. O. Trinkle,* of Garden City, as *amicus curiæ.*

The opinion of the court was delivered by

HUTCHISON, J.: The action in which this appeal is taken was under the declaratory-judgment statute, R. S. 60-3127, brought by the publishers of a weekly newspaper against the probate judge for the purpose of having a legal construction placed on R. S. 64-101 and 64-102, as applied to a monthly publication meeting the requirements of the law as a newspaper in which legal publications can be made. The trial court held that it was a proper action under the declaratory-judgment act, but that a periodical published monthly was not a legal newspaper as contemplated under the statute.

The plaintiffs appeal, alleging error as to the construction of the statute giving the requirements of a legal newspaper, and attorney for another local newspaper as *amicus curiæ* suggests the action is not one properly coming under the declaratory-judgment statute. The reason for the plaintiff's weekly newspaper being interested in the application of the requirements of the statute as to legal publi

cations to a monthly periodical is that the weekly publication having issued its first paper May 9, 1929, bases its right to be recognized as a legal newspaper published in the county for one year upon the fact of its being the successor to *Opportunity*, a monthly publication which had been printed and published in the same county for more than three years before it was changed into the weekly paper now published by the plaintiffs.

The declaratory-judgment provision of our law being modern in its use, and an extension of judicial power, is always carefully safeguarded by the courts, and would in this case, as in all such, have been first considered without a suggestion from anyone. Even by agreement of the parties, jurisdiction under this act cannot be conferred.

The allegations of the petition with reference to the defendant are as follows:

"That said defendant, A. Hurst, as the probate judge of Finney county, Kansas, denies that the Garden City *News* is a legal publication as provided for by the statutes of Kansas; or that said newspaper has a lawful right to publish legal notices, advertisements or publications of any kind, nature or description; and that should publications be made therein, that he, the said probate judge of Finney county, Kansas, will and would refuse to accept them as legal publications or approve them."

The answer of the probate judge is a special denial using substantially the same language as in the paragraph above quoted from the petition.

R. S. 60-3127 is as follows:

"In cases of actual controversy, courts of record within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for. Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right."

The first question for consideration in all cases of this kind is whether or not an actual controversy exists. It is very evident there is a difference of opinion, but that is not enough. How will it affect the probate judge if this case should be decided against him? The worst that could possibly result to him would be that he was mistaken in his opinion. That is hardly an actual controversy as intended by the statute. Plaintiffs reason out the actual effect on

their side of the question, viz., that they are being deprived of their legal rights to legal publications which they might get for their newspaper by the mistaken interpretation and erroneous judgment of the probate judge. That may cause an actual deprivation, but it is not an actual controversy. The last sentence of the statute above quoted specifically makes the act apply to controversies involving the interpretation of wills. Suppose the various devisees under a will have different opinions as to its proper construction, and the probate judge has his views, too, on the subject, and may have expressed them to the interested parties, could one of the devisees bring an action against the probate judge under this act simply because his views as to the construction were different from those of the plaintiff, and have the will interpreted? Of course not, because there is no actual controversy between them, even if he as probate judge should in the line of his official duty at some time be called upon to decide a question as to the interpretation of the will. An actual controversy would be between two or more of the devisees. It was held in the case of *Williams v. Flood*, 124 Kan. 728, 262 Pac. 563:

"An action cannot be prosecuted under section 60-3127 of the Revised Statutes, the declaratory-judgment law, against a justice of the peace to have determined the power of such justice to issue an order of attachment and a garnishee summons without a bond having been first filed, where it is not shown that there is any controversy between the justice of the peace and the party complaining except such as concerns the meaning of the statute, and where it does not appear that the plaintiff has sustained any damage or that the justice of the peace is invading any right of the plaintiff or denying him any right properly belonging to him." (Syl.)

In the case of *City of Mankato v. Jewell County Comm'rs*, 125 Kan. 674, 266 Pac. 96, it was held that a city had no right to maintain an action under this statute against the board of county commissioners and the state highway commission with respect to the location of highways throughout the county.

In a recent action brought by the state on relation of the county attorney against the board of county commissioners and county treasurer of Wyandotte county, seeking an interpretation of the law about the deposit of county funds and also respecting the payment of contract price for public works where bond had been given, the court held:

"To obtain a declaratory judgment under section 60-3127 of the Revised Statutes all persons interested in the controversy must be made parties to the

action. Those interested on one side only of the controversy are not sufficient parties, although they may disagree as to the law." (*State, ex rel., v. Wyandotte County Comm'rs,* 128 Kan. 516, syl. ¶ 2.)

"As between the county commissioners and the county treasurer there can be no such controversy over the matters presented as is contemplated by the declaratory-judgment law. The county treasurer and the county commissioners may disagree as to the law, but there is no justiciable controversy between them. The controversy, if there is any, is between them on the one side and the bank, surety, contractor, or the assignee of the contractor on the other side. The county treasurer and county commissioners are asking for instructions in matters concerning which there is no such controversy.

"In the absence of those beneficially interested in the question presented the supreme court has no power to declare what the law is. Such a declaration would be legislation." (*State, ex rel., v. Wyandotte County Comm'rs,* supra, p. 520.)

"Statutes authorizing declaratory judgments in cases where no other relief could be granted have been declared unconstitutional, and this is doubtless the correct view if the statute is construed to authorize such judgment in cases where there is no real case or controversy with opposing parties such as can be submitted to judicial consideration and judgment." (33 C. J. 1100.)

"An essential element, implied in all the definitions of a judgment which have been given, is that there must be parties whose rights are determined by the adjudication." (33 C. J. 1105.)

We can easily see how the plaintiffs herein are interested in having a favorable construction placed upon the statute, but no plausible reason or suggestion has been ventured as to the probate judge having any interest or any obligation, liability or privilege resulting from a decision in the matter involved. We therefore conclude that there exists between the plaintiffs and the probate judge no actual controversy as required by statute in order to authorize and justify the rendering of a declaratory judgment on the interpretation of R. S. 64-101 and 64-102.

Appellants in a reply brief to the brief of the *amicus curiæ* urge that if no actual controversy existed before, there does now since a local rival and competitor has asked to present a brief on the question. But we cannot consider an *amicus curiæ* a party to the action. Its function is limited to that which the name implies.

This conclusion in itself completely disposes of the entire case, but in order to avoid the multiplicity of suits when the matter is here and fully presented, we think we may with propriety say that we agree with the trial court in its findings that a monthly publication is not such a newspaper as is contemplated in R. S. 64-101 and 64-102. In order for it to meet the requirement as to age, for the

new paper being a continuation of the monthly publication, the latter must have been during that time a newspaper meeting the statutory requirements for the purpose of publishing legal notices. Appellants admit that a monthly publication could not have published notices required to be published for three consecutive weeks, but that there are some notices that could be published in such a paper, and refer to one where the number of times it is to be published is in the discretion of the probate judge. There are a few that are only required to be published once. Most of the statutory requirements are for weekly publications; some are to be published in the county newspaper.

Appellants rely largely in their contention that a monthly publication can be a legal newspaper upon the fact that when the old law of 1891 was amended in 1901 the language was changed as to the age of the publication from "a period of fifty-two consecutive weeks" to "the period of one year," insisting that the legislature deliberately and purposely relaxed the weekly requirement and left the whole matter open for any regular interval between publications. We are not convinced by this logic. Reference is also made to the later enactment (Laws 1909, ch. 160) extending the privilege of being legal publications to dailies, semiweeklies and triweeklies without mentioning weeklies, but that enactment plainly shows everything must be on a weekly basis when it selects Wednesdays and Thursdays for dailies, and for the others it authorizes the publication "on any one day of the week upon which a paper is published." It would certainly be a strained construction to hold that these two sections could include with the others a monthly publication without being mentioned as such, and if so, the same reasoning would just as easily extend it to quarterly and annual publications. If appellants' contention was adopted, then the monthly publication would be a legal newspaper for some notices and not legal for others requiring weekly insertions. The very nature and purpose of legal notices is to bring the information to the attention of interested parties by something regular and at short intervals, which, of course, would not include a monthly publication in our usual conception of regularity and short intervals.

"In ordinary understanding a newspaper is a publication, usually in sheet form, intended for general circulation, and published regularly at short intervals, containing intelligence of current events and news of general interest." (46 C. J. 19.)

Our attention is directed to a decision where a weekly changed

to a daily and did not lose its legal status, but the difficulty in the application here is the monthly publication lacked such legal status to contribute to the new weekly.

Another feature, but not conclusive in itself, is the general definition of a newspaper, as above quoted, and the requirement of our statute that it shall be a "newspaper," whereas the petition in this case at one place refers to the monthly publication as being "a monthly magazine," and the exhibit attached to the abstract bears the name *"Opportunity, the Western Kansas Magazine."*

To accept the theory of the plaintiffs we would have to conclude that the legislature when it mentioned newspapers meant to include magazines. While we agree with the trial court on this question, the case must be determined on the declaratory-judgment feature, which requires a reversal and dismissal.

The judgment is reversed and the cause is remanded with instructions to dismiss.

HOPKINS, J., not sitting.