G. L. BRYCE and ELLIE I. BRYCE, his wife, *Appellants*, vs. I. W. BULL, et al., *Appellees*.

143 So. 409.

En Banc.

Opinion filed August 3, 1932.

Petition for rehearing denied September 17, 1932.

*McCollum & Howell,* Attorneys for Appellant;

*Austin Miller,* Attorney for Appellees George W. Edgar and I. W. Bull. *Marks, Marks, Holt, Gray & Yates,* Attorneys for M. H. Weaver.

PER CURIAM.—This cause is here on appeal from a final decree dismissing a bill for specific performance by the

appellees, of two written contracts to purchase land which had been executed by the appellants as vendors and by "John W. Gunby, as trustee." The contracts provided for the conveyance of a designated percentage of certain lands whose titles were or could be made in a designated time, marketable, and contained provisions contemplating the quieting by suit of the titles of the remaining lands, to be followed by the conveyances of those lands. The contract also provided that the purchaser might, "if he so elect," form a' corporation to take conveyance from the vendors and to execute and deliver to them certain notes and mortgages, and that upon the exchange of documents the vendors would "release and discharge the purchaser of and from all obligations and/or liability upon or in respect of the premises, except only as to the purchaser's agreement with respect to the purchase of the lands, if any, the titles to which it may be necessary to establish by suit." The title to the designated percentage of lands was conveyed by the vendor to The Gared Corporation of Florida, which delivered to the vendors their notes and mortgage evidencing and securing the balance of the purchase price of the lands thus conveyed. The title to certain of the lands was disapproved by the purchaser's attorney, whereupon, vendors brought and concluded a suit to quiet the title to those lands, and the purchasers having failed to take title thereto and the time therefor having elapsed, the vendors filed their bill for specific performance and alleged, among other things, that Gunby was acting not only and solely for himself, but for each of the other parties (appellees herein), with their several "knowledge, acquiescence, consent and approval," and at the instance and request of each of them. Demurrers to this bill were sustained by the Court as to all of the defendants. The complainants filed an amended bill mak-

ing no changes in the statements of the original bill, except with regard to the alleged liability of Messrs. Bull, Weaver and Edgar. In the amended bill it was made to appear that prior to the date the contracts were executed, all of the defendants had agreed with each other to jointly purchase the lands for their joint use and benefit; that they had agreed that the contract should be executed by Gunby on behalf of all of them as their agent and that pursuant to such agreement, the contracts were in effect executed by Gunby ''as trustee,'' for the use and benefit of all of the defendants and by and with the authority of all of them; that a cash payment of Five Thousand ($5,000.00) Dollars, as shown in the bill, was made by all of the defendants jointly, with knowledge of the terms and provisions of the contract and that Gunby, in all things relating to the contracts, was acting for and on behalf of all the defendants including himself, for their use and benefit, with their knowledge and consent and at their instance and request. A joint and several answer was filed by the defendants specifically denying practically all of the material allegations of the amended bill, particularly those which embraced the complainant's contention that all of the defendants were bound by the said contracts.

The case was referred to a Master, with directions to report to the Court his findings and recommendations of law and of fact. The Master's report found for the complainants and recommended a decree in their favor.

Paragraph 5 of the contract reads as follows:

"This instrument shall inure to the benefit and advantage of, and shall be binding and obligatory upon the several and respective heirs, successors and assigns of the parties hereto. The Purchaser may, if he so elect, form or cause to be formed a corporation under the laws of Florida qualified, authorized and empowered to take the conveyance, and execute and deliver the notes and

Mortgage, hereinabove provided for; and in this event Vendors will execute and deliver their said deed to, and will accept the notes and Mortgage hereinabove provided to be given from such corporation, and will, upon the execution and delivery to them by such corporation of the notes and Mortgage hereinabove required to be executed and delivered by the Purchaser, release and discharge the Purchaser of and from all obligation and/or liability upon or in respect of the premises, except only as to the Purchaser's agreement with respect to the purchase of the lands, if any, the titles to which it may be necessary to establish by suit.''

The Gared Corporation of Florida came into existence on February 1, 1926, about seven months after the execution of the contract. The deed to the said corporation was dated February 1, 1926, and recorded February 8, 1926.

According to the testimony of the defendants (appellees), they, for the purpose of avoiding personal liability decided to form a corporation to take title to the lands mentioned and described in the contracts, and they advanced their money to buy stock in a corporation and not to pay for the lands to be bought from the complainants. All of them except Gunby, formed a corporation to take title to the lands mentioned in the contract and for no other purpose and after it was formed, to each of them, including Gunby, was issued certificates calling for the same number of shares and representing approximately at par value the sums of money advanced by them. The corporation actually took title to the lands to which title was good and for which the necessary amount of cash was paid.

It is the contention of appellants that Gunby was acting for himself and his alleged associates; that the knowledge of one within the scope of the common enterprise was the knowledge of all and that their intentions, not communicated to the complainants (appel-

lants), could not affect their liability in any way. Appellees contend that Gunby was the trustee of the corporation to be formed; that he was not the agent or trustee of the other appellees, and that neither he nor the others with whom he is alleged to have been associated should be required to perform the contract.

In I. W. Phillips & Company vs. Hall, 99 Fla. 1206, 128 So. 635-637, we cited with approval the following:

"'An agent will be held personally liable where he professes to enter into a contract for a principal who is at the time non-existent, or legally incompetent or irresponsible, even though in thus entering into the contract he acts in good faith, as an agent assuming to contract for a principal must make a contract binding upon some principal, or else he himself is liable. In accordance with this rule it has been held that an agent is personally liable where he professes to enter into a contract on behalf of an unincorporated association, club or committee, or on behalf of a corporation, before its incorporation.'"

and the Court also approved the statement that "it has always been a familiar principle of the law of agency that one professing to act as agent, unless he binds his principal, is ordinarily held to bind himself."

The rule that one who assumes to act as agent for a principal who has no legal status or existence renders himself individually liable on contracts so made, does not apply where the third person has knowledge of the non-existence or incompetency of the principal; or where it is expressly understood either that the agent shall not be held, or that the contractee with knowledge of the facts extends credit to the supposed principal, of that the agent's liability shall be limited to a fund held by him for the purpose of his agency. 2 C. J. 809, 21 R. C. L. 847; Codding vs. Munson, 52 Neb. 580, 72 N. W. 846, 66 A. S. R. 524.

In Wilson vs. Friedenberg, 22 Fla. 114, 135, the Court said:

"It is well settled as a general rule that where an executor, administrator or trustee, who is sui juris, signs, a promissory note, bond or other contract, as executor, administrator or trustee, he is personally liable upon it."

However, it has also been held that trustees and other fiduciaries may exempt themselves from liability by using explicit words to show such intention, but in the absence of such words they are held bound. Robinson vs. The Springfield Company, 21 Fla. 203, 224-5. See also Falsten Realty Co. vs. Kirksey, 103 Fla. 225, 137 So. 267.

In the instant case there is nothing in the contract to indicate that the vendor had knowledge that Gunby was buying the property for a corporation to be created or for any person or persons. Neither does the contract contain words that show an intention to exempt Gunby from liability.

Henry Pilcher's Sons, Inc., vs. Martin, 102 Fla. 672, 136 So. 386, is a case where plaintiff sued certain persons trading as the Board of Stewards of Clearwater M. E. Church. The action was based on notes signed "The Board of Stewards, Clearwater M. E. Church, by A. G. McQuagge, Sec. to the Board." This Court in affirming a judgment sustaining demurrers to the declaration, said in part:

"It is true that it is alleged that A. G. McQuagge signed the note as secretary to the board, but it appears that McQuagge executed the note in the name of 'The Board of Stewards of Clearwater M. E. Church,' in his representative capacity as secretary to the board. Inasmuch as the board of stewards could not, as a matter of law, become liable in their official capacity on the contract, there can be no authority vested in McQuagge to bind the board of stewards by the execution of a contract by him; and, as this is a matter of law, the payee was charged with notice that the note was executed by a person in his representative capacity and the payee took the note with the knowledge that it was executed without legal au-

thority, and therefore the payee could not enforce it against McQuagge who so executed it. See 2 C. J. 809, Section 482, and cases there cited; Newport v. Smith, 61 Minn. 277, 63 N. W. 734; Eliason State Bank v. Montevideo Baseball Association, 160 Minn. 341, 200 N. W. 300.

"There is a distinction between the liability of one who signs a note as an official of an unincorporated church organization, who by signing such note becomes personally liable for the payment thereof, and the liability of one who signs a note in the name of an official board of such unincorporated church organization, in which latter case the execution binds no one in any capacity, as is seen by the authorities last above cited."

This last cited case is valuable in the treatment of this case for the distinction pointed out in the last paragraph of the quoted language. Here Gunby did not stipulate in behalf of anyone by name.

It is our judgment that the parties to the contract contemplated the creation of a legal obligation capable of enforcement, and we accordingly hold that it is, to say the least of it, binding upon Gunby.

Having come to the conclusion that Gunby was acting for himself, the question now arises, was he also acting for his alleged associates? Appellants contend that the appellees were joint adventurers, or co-promoters of a proposed corporation and inasmuch as the corporation had not been created when the contracts were delivered, the liability of appellees follows either their status as joint adventurers, or as promoters.

In Proctor vs. Hearne, 100 Fla. 1180, 131 So. 173, this Court has said that "The relation of joint adventurers is quite similar to that of partnership, and is governed by the principles which constitute and control the law of partnership;" that "As respects the character of the business undertaken, the principal difference between a

partnership and a joint adventure is that the former term is generally used to characterize a general and continuing joint venture, while the latter term usually, though not necessarily, designates a single joint adventure consisting of one transaction''; that the relation of joint adventurers is governed by the principles which constitute and control the law of partnership; that a partnership is in effect a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for his co-partners, and that under the law governing transactions between partners and third persons, an undiscovered or dormant partner may be held liable after he is discovered, although the third party at the time of the transaction, supposed that he was dealing with the ostensible partner as an individual.

The general rule is that each one of several joint adventurers has power to bind the others in matters which are strictly within the scope of the joint enterprise. (Proctor vs. Hearne, supra, 15 R. C. L. 505). However, '' 'One who is a member of a joint adventure but who is unknown to be such at the time by a third person who enters into a contract with another member individually is not rendered liable to such third person for services rendered under such contract, or for damages for the breach thereof, by the fact that the contract relates to the business of the joint adventure if the contracting member in making such contract exceeded his authority and had no power to bind his associates thereby.' '' 33 C. J. 872.

We quote with approval the following:

"Whether the parties to a particular contract have thereby created, as between themselves, the relation of joint adventurers, or some other relation, depends upon their actual intention, which is to be determined in accordance with the ordinary rules governing the interpretation and construction of contracts. But as to third

persons the legal, and not the actual, intention controls." 33 C. J. 845, 30 Cyc. 382.

If the intent to do those things which constitute a joint adventure exists, the parties will be joint adventurers notwithstanding they also intend to avoid personal liability that attaches to joint adventurers.

In 20 R. C. L., page 833, the authors say:

"It is the substance, and not the name, of the arrangement or contract between them which determines their legal relation toward each other. * * * The courts will not countenance ingenious contrivances for giving persons the whole of the advantages of a partnership, without subjecting them, as they thought, to any of the liabilities, and an agreement which attempts to carry out a joint venture for the mutual profit of the adventurers and evade their responsibility for losses may be enforced and construed as creating a partnership."

On behalf of the complainant the proof shows that in the latter part of June 1925, Weaver approached a real estate broker with the statement that "they" wanted her to find a piece of property upon which they might make a profit. She, the real estate broker, one L'Engle, another broker, and Edgar went out and inspected the property that is described in the contract that was afterwards prepared and signed "John W. Gunby, as Trustee;" that a binder of $5000.00 was given by Edgar and the same was turned over to Bryce; that Edgar said it was a little larger proposition than he and Weaver could handle by themselves, and that he had a couple of friends he wanted to talk to; that afterwards, Messrs. Weaver, Gunby and Bull in equal amounts had paid in three-fourths of $5000.00 and the same was turned over to Edgar; that after the land had been inspected by Edgar, the broker had a conference with Gunby and Edgar in the latter's office when the transaction was discussed and Gunby "acted very much peeved with the purchase that had been made;" that the broker also had

an interview with Dr. Bull when nothing specific was said by him except that "he was going in with them on the purchase" of the land; that the broker never heard of a corporation until just previous to the time title to a part of the lands, which are not involved here, was taken and that in the first draft of the contracts, which were not signed, "George W. Edgar, as Trustee," was designated as the purchaser. The broker testified that "Mr. Weaver and Dr. Edgar were the ones I was having my dealings with at the time the land was shown and previous to that time."

Gunby, Weaver, Bull and Edgar testified that they never jointly agreed to purchase the lands, never "intended" to incur any personal liability in the transaction, but "intended" to purchase the lands by the means of the corporation, not as individuals; that none of them ever authorized or directed Gunby to execute the contracts on their behalf and Gunby stated that he did not so execute them; that they never acquiesced in or approved the contracts; that the several checks given by them and paid to the Bryces at the time the conveyance was made by the Bryces were for "my holdings in the corporation;" that they had no knowledge that Gunby was acting or purporting to act as their trustee, agent, or in any way as their representative. Stock certificates for thirty-five shares each, were delivered to each of the appellees by The Gared Corporation of Florida and testimony further developed the fact that the $5000.00 "binder" originally paid to Bryce with Edgar's check was "made up by gentlemen interested in the corporation" and that the original idea that was carried out was that Gunby, Edgar, Weaver and Bull would go into the proposition on an equal basis, each of them taking a one-fourth; that all contributed an equal share to the expenses of the transaction, including the incorporation, and that they

contributed equally "to the fund that was to be used as a part of the purchase price" of the lands. There were no other stockholders of the corporation and it acquired no property other than lands included in the contracts and conveyed to it by the Bryces. No minutes of corporate meetings were made. It was further shown that defendants gave their attorney, one Hemphill, "to secretly understand that it (the proposed purchase of the land) was to be handled as a corporation and no other way."

The foregoing part of this opinion was included in an opinion prepared by Mr. Commissioner Davis for the consideration of the Court following which he restated the gist of a considerable portion of the evidence upon which the decree was based and arrived at a conclusion as to the liability of Gunby, Edgar, Weaver and Bull, to which the Court did not agree. It is sufficient to say that a majority of the Court concurs in the opinion that the record shows the existence of a joint adventure between Gunby, Edgar, Weaver and Bull and of a contract entered into by Gunby, representing himself and his co-adventurers prior to the organization and creation of a corporation and that the liability of each under such contract is fixed by the terms of Section 4054 R. G. S., 5983 C. G. L., regardless of what might have been the understanding or agreements made between the co-adventurers and that, therefore, all of the evidence showing, or tending to show, that one or more of these co-adventurers did not intend to be bound by the pre-organization contract becomes irrelevant and immaterial. Gunby could not have acted in making the contract as Trustee for a corporation because no corporation existed at that time and the statute above referred to fixes the liability of persons transacting business in the manner in which these parties entered into the contract here under con-

sideration the same as if they were members of a general partnership. Their liability being fixed by statute, they cannot be heard to say that they intended some other and different liability to attach and exist.

We, therefore, hold that the final decree should be reversed with directions that a decree be entered not inconsistent with this opinion. It is so ordered.

Reversed.

BUFORD, C.J., AND WHITFIELD, ELLIS AND TERRELL, J.J., concur.

BROWN AND DAVIS, J.J., dissent.

DAVIS, J. (Dissenting).—The Chancellor held that no liability as joint adventurers had been established by the evidence and I must concur in that conclusion.

A joint adventure, it seems to me, cannot be conjured out of a mere concert of action looking toward the organization of a future corporation to complete the purchase of a tract of land, but without any present intent to participate, or present participation as purchasers, prior to the organization of the contemplated corporation.

When the intent to participate, or actual participation, as joint adventurers is shown, liability of course follows, regardless of the fact that the parties may have actually thought or intended that liability would not follow from what they did or intended, but when no present participation, nor intent to participate, in a joint enterprice is shown, liability cannot be imputed from mere concert of action, in the absence of some element of estoppel arising, which precludes the party from a denial of liability under the particular circumstances.

As I understand the record, this is not a case where several have entered into a present arrangement to presently buy land in the name of one only, to be bound amongst themselves for their pro rata part of the ex-

penses, in consideration of which they would be entitled to enjoy a proportionate part of the profits. If that were the case, a joint adventure would be shown, even though a corporation were contemplated to be later organized to take over the project from the joint adventurers.

I am unable to reconcile the views of Mr. Commissioner Davis and the majority of the Court with what was said in McNabb vs. Tampa & St. Petersburg Land Co., 78 Fla. 149, 83 Sou. 90, as to relationship which may exist between acts of intended corporators and a proposed but yet unformed corporation, which however, is afterwards formed.

I think the decree should be affirmed.

BROWN, J., concurs.

BROWN, J. (Concurring).—In addition to what Justice Davis has said, I am inclined to think that on the question of whether a joint adventure was entered into we cannot say that the Chancellor's conclusions on the evidence were clearly erroneous.