[Civ. No. 24523.  First Dist., Div. One.  Apr. 11, 1968.]

MISSION HILLS DEVELOPMENT CORP. et al., Plaintiffs and Respondents, v. WESTERN SMALL BUSINESS INVESTMENT CO. et al., Defendants and Appellants.

Rea, Frasse, Anastasi, Clark & Lewis, William G. Clark, Eleanor M. Kraft and Kraft & Kraft for Defendants and Appellants.

Faber L. Johnston and Faber L. Johnston, Jr., for Plaintiffs and Respondents.

ELKINGTON, J.—Defendants appeal from a judgment declaring certain promissory notes to be usurious with no interest due thereon, and adjudging that they repay to plaintiffs such interest as had theretofore been paid.

Plaintiff owned approximately 182 acres of land of which 120 acres had been developed into a golf course. The remaining 62 acres had a fair market value of $6,000 per acre and were being held for future residential development. The golf course was in financial trouble with some $200,000 of past due loans outstanding. Additional funds were needed for its completion. A teamsters' union pension fund had agreed to lend $500,000 on the security of the 182 acres, but unfortunately the loan could not be made for two years.

Seeking sorely needed interim financing, plaintiffs contacted defendants and commenced negotiations for a loan. A loan of $500,000 was granted. Plaintiffs gave defendants two 5-year promissory notes totaling $500,000 and bearing interest at 9½ percent per annum. Additionally, plaintiffs gave defendants an option to purchase the 62 acres reserved for residential development at a price of $3,000 per acre after the loan was repaid. At the same time defendants executed and delivered to plaintiffs an option which, as material here, stated: "[Defendants] for a valuable consideration, receipt of which is hereby acknowledged, hereby grant to [plaintiffs] the option to purchase from [defendants] the option to purchase the said approximately 62 acres. . . . This option may be exercised by [plaintiffs] at any time after all loans have been paid in full. The purchase price of said option, to be paid by [plaintiffs], shall be as follows: If option purchased within 1 year from execution hereof @ $800/acre. If option purchased within 2 years from execution hereof @ $1,600-acre. If option purchased within 3 years from execution hereof @ $3,200/acre. If option purchased within 4 years from execution hereof @ $4,000/acre. If option purchased within 5 years from execution hereof @ $4,800/acre."

The trial court found, among other things, to the effect that the parties intended and agreed that the two options were a

device to hide an agreement to pay an additional 10 percent interest per year over and above the 9½ percent called for under the terms of the notes.

It is from the judgment thereafter entered that this appeal is taken.

Defendants' principal contention is that the findings and judgment are not reasonably supported by the evidence.

California Constitution, article XX, section 22,[1] provides that no person "shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 percent per annum upon any loan. . . ." There are certain exceptions, admittedly not applicable here.

Where, as in the instant case, the transaction is not usurious on its face, the trial court may look beyond the form of the transaction and ascertain its substance. (*Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 340 [163 P.2d 869, 165 A.L.R. 621]; *Mong* v. *Bass*, 248 Cal.App.2d 377, 381 [56 Cal. Rptr. 579]; *Batchelor* v. *Mandigo*, 95 Cal.App.2d 816, 820 [213 P.2d 762].) The courts will not permit an evasion of the usury law by a subterfuge, and it is always permissible to show that a transaction ostensibly lawful is in fact a usurious loan. The test is whether there was an *intent* to evade the law, and the circumstances and negotiations which attended the transaction are material and should be considered in determining such intent. (*Terry Trading Corp.* v. *Barsky*, 210 Cal. 428, 432 [292 P. 474]; *Simmons* v. *Patrick*, 211 Cal.App.2d 383, 388 [27 Cal.Rptr. 347]; *Abbot* v. *Stevens*, 133 Cal.App.2d 242, 249 [284 P.2d 159].) It is immaterial whether the borrower or the lender takes the initiative in a usurious transaction. (*Williams* v. *Reed*, 48 Cal.2d 57, 68 [307 P.2d 353].)

In determining whether the findings and judgment are supported by the evidence, our inquiry ends if there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial judge. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Simmons* v. *Patrick, supra,* 211 Cal.App.2d 383, 388.) Accordingly, we now look to the record before us.

Upon their request for the loan in question plaintiffs were told they would "have to do something to sweeten the deal." Plaintiffs suggested 10 percent interest and 10

---

[1]There are two sections numbered article XX, section 22. That with which we are concerned is the second in order.

points.[2] The parties then talked about 10 points for each year of the loan but defendants suggested 9½ percent as the interest figure since they "wouldn't be so apt to get into technical violations of usury." They "discussed the fact that the point structure or the additional moneys that we were going to pay would have to be very well hidden so that they would not show on any document."

The following testimony indicates how the "point structure" was worked out. "THE COURT: Excuse me. I realize he stated this before, but can you repeat it once again as to how the ten per cent was arrived at? THE WITNESS: Yes, Your Honor. Ten points would be $50,000 a year on the $500,000 loan. We had 62 acres and we were seeking a figure, when multiplied by 62 acres, would equal $50,000 a year. Now, $800 an acre was a rounded figure; and when we multiply $800 per acre per year times 62 acres, we get, I believe, $49,600, very close to $50,000. And, as in this type of thing it looks much better if you have a rounded, even figure than if you had an odd figure of $806.73 or something like that." This option jumped from $1,600 per acre for the second year to $3,200 per acre in the third year in order to insure that plaintiffs would take up the teamsters' loan commitment for the permanent financing in two years and pay off defendants. To make doubly sure that the loan was paid within two years defendants' attorney was to be appointed plaintiffs' agent "to negotiate the take-out commitment with the teamsters' union." Defendants' option to buy the 62 acres was fixed at $3,000 per acre (one-half of market value) because it was a figure that "would not look too unusual in a document and at the same time would create a virtual certainty" that plaintiffs would have to buy back the property.

A witness for defendants who had been their principal negotiator of the loan testified that their business could not be operated profitably at 9½ percent interest. He said that they did not expect to exercise their option; they thought it would be purchased back by plaintiffs. He agreed that the subject of usury was discussed and that the $800 option repurchase price was arrived at by dividing $50,000 (10 percent of the face value of the loan) by 62 acres. And without objection by defendants he admitted authorship of a letter written to the

---

[2] The term "points" was defined at the trial as "that over and above the interest payments there will be an obligation in some fashion to pay a certain percentage of the face amount of the loan." Ten points meant 10 percent of the face amount of the loan, or $50,000.

defendants after the loan was made which among other things stated: "We understand that the golf course has now been endorsed by Lockheed and enthusiasm from other sources, so that [one of the plaintiffs] contemplates the sale of golf memberships in a large dollar volume. The only effect these developments would have on our position is the possibility of pre-payment of our note before July, 1964, since *there may be sufficient funds to save him another ten points during the second year of our loan.*" (Italics added.)

The evidence which we have related is substantial and furnishes abundant support for the trial court's findings and judgment. That which we have set forth is but a portion of the evidence which tends to show usurious intent.

■ Defendants also urge that the usury law as applied in this action unfairly discriminated against them. This discrimination results, they say, from the exemption of certain classes, including finance companies, banks, credit unions and small loan companies. Although no direct assertion of unconstitutionality is made we shall consider this contention. No claim of unconstitutionality as to California's Constitution can be valid, for the criticized exemptions derive directly from that document. The United States Supreme Court has held that a state may properly establish classes which are exempt from the operation of its usury laws. (See *Mutual Loan Co.* v. *Martell,* 222 U.S. 225 [56 L.Ed. 175, 32 S.Ct. 74]; *Griffith* v. *Connecticut,* 218 U.S. 563 [54 L.Ed. 1151, 31 S.Ct. 132].)

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.