HAROLD V. AND MARGARET HAVENS ET UX *v.*
JOSEPH E. WOODFILL.

[No. 1070A175, 6, 7—Consolidated. Filed February 3, 1971. Rehearing denied March 10, 1971. Transfer denied July 7, 1971.]

*Patrick W. Mullen,* of Indianapolis, for appellants.

*Ralph Hamill, Hamill, Price & Carroll,* of Indianapolis, for appellee.

HOFFMAN, C.J.—This appeal arises from the overruling of defendants-appellants' motion to correct errors. Plaintiff-appellee initiated the action requesting a declaratory judgment that certain promissory notes bearing an interest rate of 9% were not usurious under the applicable statute.

Acts 1969, ch. 106, § 1, p. 248, Ind. Stat. Anno., § 19-12-101, Burns' 1970 Cum. Supp., reads as follows:

"Legal rates of interest on loans or forbearances.—The interest on loans or forbearance of money, goods, or things in action, shall be as follows:

(a) When the parties do not agree on the rate, interest shall be at the rate of six dollars [$6.00] per year per one hundred dollars [$100] ;

(b) By agreement in writing signed by the party to be charged thereby, and not otherwise, any obligor other than a corporation *or a partnership, limited partnership, joint ventures and trusts* may lawfully agree to pay any rate of interest not in excess of eight dollars [$8.00] per year per one hundred dollars [$100] ;

(c) By agreement in writing duly signed by it, and not otherwise, any corporation, *partnership, limited partnership, joint ventures and trusts* may lawfully agree to pay any rate of interest whatever.

"Interest as used in this and the succeeding sections of this act [§§ 19-12-101—19-12-108] shall include discount and may be paid and collected in advance." (Emphasis supplied.)

The emphasized words were added in 1969 by our Legislature. Those words gave rise to three transactions which led to the litigation presently before us for review.

This is an appeal of three actions which were properly consolidated in this court under Rule AP. 5(B), Indiana Rules of Procedure. All three cases were submitted to the trial court on an agreed statement of facts which may be summarized as follows:

On April 1, 1970, appellants, husband and wife, entered into a partnership agreement for the purpose of securing the loan in question, investing the proceeds, with a view towards long-term appreciation and resulting gain. On April 15, 1970, appellants, as partners, borrowed $100 at an interest rate of 9% per annum by properly executing a promissory note payable to appellee.

On April 15, 1970, appellants, husband and wife, entered

into a joint venture for the purpose of obtaining the loan in question, investing the proceeds, with a view towards long-term appreciation and resulting gain. On the same day appellants, members of the joint venture, borrowed $100 at an interest rate of 9% per annum by properly executing a promissory note payable to appellee.

On April 15, 1970, appellants, husband and wife, entered into a trust agreement for the purpose of obtaining the loan in question, investing the proceeds, with a view towards long-term appreciation and resulting gain. On the same day appellants, as trustees, borrowed $100 at an interest rate of 9% per annum by properly executing a promissory note payable to appellee.

On April 15, 1970, appellee filed complaints for declaratory judgment on the notes executed by appellants as partners and as members of the joint venture. On April 16, 1970, appellee filed a similar complaint on the note executed by appellants as trustees. In each complaint appellee prayed that the court construe § 19-12-101, *supra,* and declare each of the notes not to be in conflict with the statute, and that the 9% per annum interest on the loans be held valid, binding and not usurious.

On April 22, 1970, appellants answered each of the three complaints admitting all material allegations of the complaints and praying that the notes be declared invalid as in violation of § 19-12-101, *supra.*

As previously stated, the cases were submitted on an agreed statement of facts. On May 28, 1970, the trial court entered judgment in each of the three causes for appellee. The court held the notes *not* to be in violation of § 19-12-101, *supra.* The court further held the notes to be binding obligations according to the terms set forth therein and that the notes were not usurious.

Appellants timely filed their motion to correct errors which was overruled by the trial court. In their brief appellants have chosen to brief and argue:

1. That the decision is not supported by sufficient evidence upon all necessary elements of a claim in that:

    (a) The evidence is insufficient to sustain a finding that there exists a valid partnership—joint venture—or trust—between the appellants;

    (b) The evidence is insufficient to support a decision that the parties' note is not usurious; and

    (c) The evidence is insufficient to support a decision that the parties' 9% interest rate note is a valid and binding obligation as to interest.

2. That the decision is contrary to law in that:

    (a) It is contrary to § 19-12-101, *supra;*

    (b) It is contrary to Acts 1929, ch. 220, § 3, p. 804, Ind. Stat. Anno., § 19-12-104, Burns' 1964 Repl., in awarding plaintiff any interest over 6%; and

    (c) It held that the parties' 9% interest rate note is not usurious.

It is clear that the Legislature, when amending § 19-12-101, *supra,* intended to expand the exemptions to the usury statute to include partnerships, limited partnerships, joint ventures and trusts as well as the only previous exception—corporations. This appeal must decide whether exemptions contained in the usury statute include transactions of the nature here involved.

We must, therefore, look to the language of the statute, the interaction of the statute with other legislative enactments, and the transactions which give rise to this appeal.

Section 19-12-101, *supra,* of the usury statute is not wholly consistent with § 19-12-104, *supra,* which is as follows:

"Usurious rate of interest in contract—Debtor's recoupment.—When a greater rate of interest than is hereby allowed shall be contracted for, the contract shall be void as to the usurious interest contracted for; and if it appears that interest at a higher rate than eight per cent [8%] has been, directly or indirectly, *contracted for by an obligor other than a corporation,* the excess of interest over six per cent [6%] shall be deemed usurious and illegal, and, in an action on a contract affected by such usury, the excess over the legal interest may be recouped by the debtor, whenever

it has been reserved or paid before the bringing of the suit." (Emphasis supplied.)

Although § 19-12-101, *supra,* exempts partnerships, limited partnerships, joint ventures and trusts, as well as corporations from the 8% limit in § 19-12-104, *supra,* apparently all but corporations are given a right of recoupment.

One interpretation of this inconsistency is that a lender may loan money at a rate higher than 8% to all the named exceptions in § 19-12-101, *supra,* but if interest in excess of 8% is stated such note is voidable as to any interest in excess of 6% at the option of any named exception other than a corporation. This interpretation is not logical and cannot be accepted.

The words, "[w]hen a greater rate of interest than is *hereby allowed",* found in § 19-12-104, *supra,* relate back to § 19-12-101, *supra,* and deny a right of recoupment by the named exceptions in § 19-12-101, *supra,* regardless of whether or not they are again named as exceptions in § 19-12-104, *supra.* This interpretation makes the two sections consistent with each other and is the only one which will retain the effectiveness of each of the sections, *i.e.,* not render one nugatory at the expense of the other.

It was clearly the intention of the Legislature to exclude partnerships, limited partnerships, joint ventures and trusts. This interpretation is consistent with 2 Sutherland, Statutory Construction (Horack, 3d Ed.), § 4704, at 339, where the following statement is made:

"If upon examination the general meaning and object of the statute is inconsistent with the literal import of any clause or section, such clause or section must, if possible, be construed according to that purpose. But to warrant the change of the sense to accommodate it to a broader or narrower import, the intention of the legislature must be clear and manifest."

Appellants attack the validity of the partnership, joint venture, and trust involved in this appeal. It is not contended

that they were not legally created or fail to conform to any "technical" rules for the creation of a partnership, joint venture, or trust under the laws of the State of Indiana. Appellants argue that in the instant case they are mere shams disguising the individuals involved—admittedly formed for the purpose of borrowing money at 9% interest and, thus, as they relate to the usury statute § 19-12-101, *supra*, are not valid.

Appellee argues that the statute is clear and unambiguous. It makes no distinction or condition on the type of partnership, limited partnership, joint venture, trust or corporation that is excluded from § 19-12-101, *supra*. Thus, under the wording of the statute it makes no difference that the expressed purpose of the transactions was to obtain a loan which they could not have otherwise obtained.

Usury statutes or the condemnation of usurious rates have very deep roots into American society, indeed, all of western civilization. The Holy Bible relates that Moses was told:

> "If thou lend money to *any of* my people *that* is poor by thee, thou shalt not be to him as an usurer, neither shalt thou lay upon him usury." (Exodus 22:25)

The Legislature did not repeal the usury statute, § 19-12-101, *supra*. They added to the sole exception (corporations) partnerships, limited partnerships, joint ventures and trusts.

The notes involved in this appeal are not usurious on their face. The facts need no interpretation inasmuch as it was agreed that the *purpose* of forming the partnership, joint venture and trust was to obtain loans at a rate that would have otherwise been usurious on its face.

The issue presented by this appeal is: May individuals, through the use of words and paper creating a partnership, limited partnership, joint venture, trust or a corporation purposely circumvent the usury statute? They cannot, for to allow such action would effectively repeal the usury statute.

This is a case of first impression in Indiana. Therefore, we look to other jurisdictions for assistance. However, these cases are not binding upon the courts of Indiana. In *Allen etc.* v. *Van Buren Township etc.*, 243 Ind. 665, at 671, 184 N. E. 2d 25, at 28 (1963), our Supreme Court, speaking through Judge Bobbitt, said:

> "While well-reasoned opinions from other jurisdictions may be persuasive in the determination of a new question of law they are, however, not conclusive."

The corporation exception to usury is the oldest and most widespread. Consequently, the cases dealing with issues analogous to the one in the instant case involve corporations as borrowers rather than a partnership, joint venture or trust.

Appellee cites and relies heavily upon *Jenkins* v. *Moyse*, 254 N. Y. 319, 172 N. E. 521 (1930). In *Jenkins* a corporation was formed and had as its assets a commercial building. A loan was obtained and a mortgage given upon the building to secure the loan. The interest agreed upon was in excess of the rate allowed by the usury laws as applied to individuals. The mortgage was then foreclosed by court action. Jenkins, the sole stockholder in the corporation and who had transferred the building to the corporation, brought an action to set aside said mortgage as usurious. The court found *that the loan was payable only by the corporation and out of property which the corporation had a right to mortgage.* The court at 522-523 of 172 N. E. stated:

> "*The test of whether this loan is usurious is whether it was in fact made to the plaintiff. Doubtless at times loans are made in fact to an individual though in form they are made to a corporation to hide the fact that the lender has exacted an illegal rate of interest from the real borrower. We do not now deal with such a situation.* Here the corporation was formed and the loan made to it, rather than to the individual who owned the corporate stock, because the parties sought to avail themselves of the rights the law accords to those who do business in corporate form under a franchise from the state. The fact that the sole owner

of the stock of the corporation is an individual does not change those rights. He did not in his individual capacity borrow any money or agree to repay any money." (Emphasis supplied.)

The formation of the corporation and the transactions involved in *Jenkins* made it distinguishable from the instant case. In the instant case it is clear from the agreed facts and circumstances that the loans in question were in fact made to appellants. The manipulation of paper in the instant case will not be sufficient to circumvent the purpose of the usury statute, § 19-12-101, *supra*. To so hold would, in effect, render § 19-12-101, *et seq.*, nugatory, *i.e.*, effectively repeal the statutes by implication so that there would be no limit on the amount of interest chargeable in Indiana. If the Legislature had intended such a result it would have repealed, and not amended, § 19-12-101, *supra*.

Furthermore, if this court were to sanction transactions such as those involved in the instant case, the result would be to repeal, by implication, Acts 1963, ch. 233, § 1, p. 320, *et seq.*, Ind. Stat. Anno., § 18-3001, *et seq.*, Burns' 1964 Repl.— the Act controlling small loan companies. Section 18-3001, *supra*, reads as follows:

"License required — Application — Issuance.—Except as otherwise authorized by this act [§§ 18-3001—18-3005] and unless and until a license shall have been obtained as in this act provided no person, copartnership, or corporation shall engage in the business of making loans of money, credit, goods, or things in action in the amount or of the value of one thousand dollars [$1,000] or less and charge, contract for, or receive on any such loan a greater rate of interest or consideration therefor than the lender would be permitted by law to charge if he were not a licensee hereunder. * * *."

If, by the completion of a very simple document making husband and wife partners at the same time a loan is procured, the lender and borrower could effectively sidestep the 8% limit on loans—to any degree desired—there would be no

reason why anyone would obtain a license as required in order to charge the higher rates allowed by § 18-3001, *et seq., supra.* The State would then lose whatever control it presently has— through the licensing process—over such small loan businesses. The Legislature did not intend such a result.

The Court of Appeals of California, Division One, in *Mission Hills Dev. Corp.* v. *Western Small Business Inv. Co.,* 67 Cal. Rptr. 505, 260 Cal. App. 2d 923 (1968), aptly stated the role of the trial court in lifting the veil which hides usurious transactions hidden behind a cloak of legality, and at 926 of 260 Cal. App. 2d, stated:

> "Where, as in the instant case, the transaction is not usurious on its face, the trial court may look beyond the form of the transaction and ascertain its substance. [Citing authorities.] The court will not permit an evasion of the usury law by a subterfuge, and it is always permissible to show that a transaction obstensibly lawful is in fact a usurious loan. The test is whether there was an *intent* to evade the law, and the circumstances and negotiations which attended the transaction are material and should be considered in determining such intent. [Citing authorities.] It is immaterial whether the borrower or the lender takes the initiative in a usurious transaction."

Other cases have held that whether a particular transaction is usurious is a question of fact. See: *Simmons* v. *Patrick,* 27 Cal. Rptr. 347, 356, 211 Cal. App. 2d 383 (1963) ; *Massie* v. *Rubin,* 270 F. 2d 60, 62 (10th Cir. 1959) ; *Janisse* v. *Winston Investment Company,* 154 Cal. App. 2d 580, 317 P. 2d 48, 50 (1957).

The exceptions created by the Legislature may not be used by individuals to obtain a loan ostensibly as one of the named exceptions, but in reality to the individuals themselves.

When presented with such a situation the courts of Indiana will not look exclusively to the legality of the creation of the entity which is excepted from the usury statute, but will look to the facts and circumstances of the case and, if the individuals involved are lurking behind a cloak of legality to

circumvent the statute, shall declare any interest in excess of 6% void.

Judgment of the trial court is reversed, and the trial court is instructed to enter judgment consistent with this opinion.

Judgment reversed with instructions.

Sharp and Staton, JJ., concur; White, J., concurs with opinion.

### Concurring Opinion

White, J.—I agree that individuals who are not *bona fide* partners, joint venturers, or trustees cannot bind themselves to pay more than eight percent interest on ordinary loans merely by signing papers saying they are partners, joint venturers, or trustees. Individuals, including husbands and wives, may, nevertheless, become *bona fide* partners or joint venturers in investment enterprises or trustees of such a trust.[1] In fact it would seem to me that whenever two or more persons associate themselves together as active participants in a business enterprise, without incorporating, they probably become either a joint venture, a partnership, or a business trust.[2]

There is almost no evidence in the case at bar that the husband and wife appellants were engaged in any business enterprise. They stipulated that they "entered into this partnership/joint venture/trust agreement/for the purpose of obtaining the loan in question and investing the proceeds of this loan, with a view towards long term appreciation and resulting gain." That vague general statement could refer to a

---

1. "Appellant could become the business partner of her husband, and is bound by an estoppel *in pais* as any other person. Her representations to the bank that she was such partner and was borrowing money with her husband to be used in the partnership business were as binding upon her as if she were a *feme sole*." *Anderson v. Citizens Nat. Bank* (1906), 38 Ind. App. 190, 193, 76 N.E. 811, 812.

2. "If the intent to do those things which constitute a joint venture exists, the parties will be joint venturers even though they also intended to avoid the personal liability that attaches to joint venturers." 46 Am. Jur. 2d 31, Joint Venturers § 9, citing *Bryce v. Bull*, 106 Fla. 336, 143 So. 409.

business enterprise but seems more descriptive of the purchase of a painting or an antique for the home, which they could well be buying "with a view toward long term appreciation." Had the amount of the note been sufficient (e.g., $10,000.00 instead of $100.00) the described investment might well have been a family home or a vacant lot on which they expected to build their home in the future.

The evidence was quite obviously insufficient to sustain the finding that the husband and wife "entered into a valid partnership agreement"/". . . a valid joint venture"/". . . a valid trust agreement." But the greatest doubt as to the *bona fides* of any of these agreements arises out of the very obvious fact that they were entered into for purpose of creating "facts" on which to base these three test cases. The findings in each of these cases "[t]hat a genuine controversy exists between the parties" is wholly unsupported.[3]

It may be that we are performing a public service by interpreting the 1969 amendment to the usury statute. I cannot believe, however, that any interpretation based on the vague generalizations here called "An Agreed Statement of Facts" can be of much help in the later decision of a live case arising out of real facts. Nor do I believe the time of trial courts and appellate courts should be devoted to the decision of moot cases or the rendition of advisory opinions. My inclination is to follow the rule stated in *Zoercher* v. *Agler* (1930), 202 Ind. 214, 221, n. 1, 172 N. E. 186, 70 A. L. R. 1232, as follows:

> "While declaratory judgments acts should be liberally interpreted, *Tennessee Eastern Electric Co.* v. *Hannah* (1928), 157 Tenn. 582, 12 S. W. (2d) 372, an examination of the recent cases shows that in a large number of them the courts are compelled to refuse to determine controversies which are not real. Moot or theoretical questions cannot be litigated under such acts, *Kelly* v. *Jackson* (1925), 206 Ky. 815,

3. The stipulation of the parties that the controversy is genuine can have little weight in the face of the inferences which arise out of the simultaneous execution of the three agreements, the three loans of $100.00 each, and the immediate filing of the three declaratory judgment actions.

268 S. W. 539; *Miller* v. *Miller, supra* [149 Tenn. 463, 261 S. W. 965]; *Garden City News* v. *Hurst* (1929), 129 Kans. 365, 282 Pac. 720; nor can actions be brought merely to secure free advice where there is no present existing controversy, *Post* v. *Metropolitan Casualty Ins. Co.* (1929), 227 App. Div. 156, 237 N. Y. Supp. 64; *Dietz* v. *Zimmer* (1929), 231 Ky. 546, 21 S. W. (2d) 999)."

With these reservations I concur in the court's opinion by Chief Justice Hoffman.

NOTE.—Reported in 266 N. E. 2d 221.