[Civ. No. 5392.  Fourth Dist.  Apr. 22, 1957.]

THOMAS EISTRAT et al., Appellants, v. WILLIAM I. HUMISTON et al., Respondents.

Thomas Eistrat and Elma Eistrat, in pro. per., for Appellants.

Francis B. Cobb and W. Floyd Cobb for Respondents.

MUSSELL, J.—Plaintiffs filed two actions for declaratory relief in the Superior Court of Tulare County, which actions are numbered 42418 and 46892.  The pleadings in action Number 46892 are not included in the record herein.  However, the trial court found that the first cause of action set forth in plaintiffs' amendment to the eighth amended complaint in action Number 42418 is predicated upon the same facts as set forth in plaintiffs' amended complaint in action Number 46892 and that the cross-complaint of William I. Humiston, filed in action 46892, is predicated upon the same facts as set forth in his cross-complaint filed in case Number

42418. The two actions were consolidated for trial and one judgment was rendered. William I. Humiston and his wife were named as defendants in the amendment to the eighth amended complaint in action Number 42418 and William Humiston was the only defendant named in action Number 46892. Seven causes of action are pleaded in the amendment to the eighth amended complaint in action Number 42418, all alleged as arising out of an agreement in writing, which is marked "Exhibit A" and attached to the fifth amended complaint. This agreement between plaintiffs, as parties of the first part, and defendant William I. Humiston, as party of the second part, was executed by the parties on April 28, 1951. It provides generally for the sale and removal of timber located on property owned by the plaintiffs in Sequoia National Forest in Tulare County.

The agreement and amendments thereto provided, among other things, that in consideration of any rights to accrue to second party, he should first pay parties of the first part the sum of $35,000, cash or securities which they "accept in lieu thereof" and that "default in payment of notes, if given for security, shall, at the option of the parties of the first part, terminate all rights in the party of the second part under this agreement." It is further stated therein that no assignment of the agreement could be made by second party; that "in consideration of the payment of the sums provided herein and of the agreements set forth, parties of the first part hereby sell, tranfer and convey to party of second part all right, title and interest of parties of the first part in and to all timber standing on said real property, subject to all other provisions of this agreement, said all timber being all timber except that reserved to the party of the first part by Paragraphs IX and X (The timber reserved under paragraphs IX and X was that having a circumference measured inside the bark of less than 70 inches at a point of measurement 42 inches from the ground and trees designated by the district forest ranger as seed trees.); that all rights of the second party under the agreement terminate on or before December 31, 1952, except for removal of lumber by May 30, 1953; that second party shall comply with the rules and regulations of the Supervisor of the Sequoia National Forest relative to the cutting, lumbering or logging on government lands and that all rights of second party shall be terminated as of two weeks after notification by the district ranger of the breach in such rules, provided corrections to the satisfaction of the district ranger

have not been complied with. Party of the second part agreed to pay party of the first part the sum of $50 as liquidated damages for the cutting of each tree of any species of any size less than 70 inches in circumference. It is further provided that said trees designated by the district ranger shall not be cut, and if such trees are cut or injured, second party agrees to pay first party $500 as liquidated damages for each such tree cut or injured. Time is made the essence of the agreement and it is further agreed that in the event of the breach of the agreement by second party that the $35,000 paid shall be only partial liquidated damages due first party; that title shall pass to party of the second part to that timber to be cut, at the time of its felling, with reversion to the party of the first part of all timber, or its products therefrom, not removed from the boundaries of said land by the time indicated in paragraph five (December 31, 1952, except for removal by May 30, 1953). It was further agreed that supervision of the operations of second party by the United States Forest Service may be required by first party by cooperative agreement between first party and the Forest Service; that second party shall be bound by such supervision and by the requirements of said forest service and that all rights under the agreement are terminated in the event of noncompliance with said requirements.

On April 28, 1951, the United States Forest Service and the Eistrats, as owners of the property involved, entered into an agreement in writing wherein the owners agreed to conditions imposed by the Forest Service relative to the cutting and felling of timber, slash disposal, fire precautions, skidding requirements, occupancy of the property and milling requirements. This agreement is denominated "Cooperative Timber Sale Administrative Agreement."

Pursuant to the terms of the agreement of April 28, 1951, between the Eistrats and Humiston relative to the payment of $35,000 cash by Humiston, the sum of $5,000 in cash was paid by him and he executed and delivered to the Eistrats a promissory note, dated April 28, 1951. The note provided for the payment to the Eistrats of the sum of $30,000 as follows: $5,000 June 1, 1951, and the further sums of $5,000 on the first of each month thereafter for five months. The note contained a recital that if suit is instituted thereon, Humiston agreed to pay "all costs of such action, together with a reasonable attorney's fee actually incurred" and a further recital that "this note is secured by 366 shares of common stock

of Associated Piping and Engineering Company, Inc.'' On August 15, 1951, by written agreement, the said stock was returned to Humiston by the Eistrats and the time for payment of the promissory note was extended to January 2, 1952, in consideration of Humiston's transfer to the Eistrats of all his rights to all fir and cedar timber on the property. Humiston made the payments that became due under the promissory note for the months of June and July, 1951, and made no further payments thereon.

On May 5, 1951, Humiston entered into a logging contract in writing with one Joseph A. Rego in which Rego agreed to cut, log and deliver, to any and all saw mills designated by Humiston, all timber belonging to Humiston on the property involved and purchased from the Eistrats on April 28, 1951. Rego commenced operations on the property under his logging contract and thereafter, on July 11, 1951, the forest ranger inspected the property and notified Eistrat by letter, stating therein that the operator was cutting pine on the premises; that the trees had been felled carefully; that the operator had done considerable work in cleaning up the area but that there was considerably more work yet to be done to conform with the requirements of the contract. On August 28, 1951, a report of the operations on the property was made by the district forest ranger to the Eistrats. This report showed that the previous operations on the property had not been done in a manner satisfactory to the ranger and that Humiston had employed a new operator, one Harry Upton; that some clean-up work had been done but not satisfactorily; that in his opinion Rego was attempting to comply with the stipulations of the contract but had not done a thorough job. During the early part of September, 1951, Humiston went to see the district forest ranger, Alden L. Wuoltee, and was informed by him that in his opinion there was no urgency about doing the things that had to be done under Humiston's contract, provided they were done before winter set in.

On October 5, 1951, at a time when Humiston had downed, cut and bucked on the property 185,000 board feet of pine timber and prior to the time Humiston had cut all of the merchantable timber to be cut under the contract, the Eistrats served a written notice upon Humiston of their intention to terminate the agreement, as modified, and at the same time and on the same day, instituted the instant action, Number 42418.

The trial court found, *inter alia,* that the contract of April

28, 1951, notwithstanding its title "Option Agreement Concerning Timber," was a contract for the sale of timber; that it was to be performed by Humiston's representatives under the direction of the United States forest ranger; that Humiston promised to pay plaintiffs $5,000 on the 1st day of June, 1951, and the sum of $5,000 on the first day of each successive month for five months; that no part of the principal has been paid except $5,000 paid during June and July, 1951, and that the sum of $20,000 was due, owing and unpaid on account of the principal of said note, plus interest; that the note provided for the payment of attorney's fees but that plaintiffs appeared in persona and are not entitled to attorney's fees; that the plaintiffs terminated the rights of the defendants under the written contract of April 28, 1951, by notice given to the defendants on October 5, 1951; that plaintiffs "are not entitled to any damages under their second cause of action as stated in their 'Amendment to Eighth Amended Complaint' for the reason that the agreement of April 28, 1951, required defendants to clean up the premises, and the court further finds that any cut logs on the premises at the inception of the agreement were given to the defendants by the plaintiffs," that "It is further found that as to whether or not the agreement was assigned by the defendant, William I. Humiston, is immaterial inasmuch as plaintiffs admit they first learned of the alleged assignment in 1954, long after they had terminated the 'Option Agreement' "; that "It is true that plaintiffs were not damaged by reason of defendants failing to fall snags concurrently with the falling of green timber"; that "It is not true that the defendant felled any trees less than 70 inches, measured inside the bark, in circumference, that were determined to be unnecessarily felled by the United States Forest Service"; that the costs of the United States Forest Service and expenses paid by plaintiffs was the sum of $164.93 and that defendant was obligated to pay one-half thereof; that during the last weeks of September, 1951, Humiston felled 185,000 board feet of pine timber of size greater than 70 inches in circumference, measured inside the bark at above 42 inches above ground, and converted said timber into logs; that in September, 1953, plaintiffs sold said logs for $5.00 per thousand board feet and that said logs had deteriorated by lying on the ground for two years; that the title to these cut logs passed from plaintiffs to defendants when they were cut and that the plaintiffs were therefore not damaged by a deterioration of said logs; that defendants were obligated to do all

they could to mitigate damages when plaintiffs rightfully terminated the agreement because of the breach thereof by defendants and that defendants did nothing in regard to the mitigation of damages resulting from deterioration of said logs; that at no time did plaintiffs have any right, title or interest in said logs or the lumber made therefrom that were taken and carried away from said lands by defendants; that defendant Humiston was not entitled to recover on his cross-complaint except the sum of $925.

The court then concluded that plaintiffs were entitled to judgment against William I. Humiston for the sum of $20,000 principal, together with $2,950 interest accrued thereon, together with the sum of $82.46 incurred as United States Forest Service expenses and costs, less the sum of $925, the amount received by plaintiffs from the sale of the logs remaining on the property on October 5, 1951.

Judgment was entered that plaintiffs recover from defendant William I. Humiston the principal sum of $19,157.46, together with interest in the sum of $2,950 and costs in the sum of $1,197.52. It was further decreed that the defendant William I. Humiston was the owner of all logs severed and all logs removed from plaintiffs' land during the year 1951, and that plaintiffs had no interest therein; that Humiston was not entitled to recover on his cross-complaint except the sum of $925 as an offset which was deducted from the amount due plaintiffs; that plaintiffs were not entitled to recover any sum or amount from defendant Marjorie Humiston and that she was entitled to her costs in the sum of $233.44.

Plaintiffs state in their notice of appeal that they appeal from particular parts of the judgment and then set forth 16 claimed errors on the part of the court in failing to make certain findings and conclusions and in making certain others. These claimed errors are not particular parts of the judgment. However, we conclude that the notice is sufficient to constitute a notice of appeal from the judgment and will consider the points raised and relied upon in appellants' opening brief and denominated "Statement of Errors."

▇ Appellants' first argument is that the court erred in not awarding them attorney's fees as provided for in the promissory note sued upon. The note provides that if suit is instituted thereon, Humiston agrees to pay a reasonable attorney's fee actually incurred. The record shows that the Eistrats appeared in propria persona in this action and the court so found. Plaintiffs prepared and signed the pleadings

in propria persona and conducted the trial. There is no evidence in the record that they employed attorneys, that attorney's fees were "actually incurred," or that attorneys appeared for them in the action. Under these circumstances, the court properly refused to allow the recovery of attorney's fees. Appellants cite *Richee* v. *Gillette Realty Co.*, 97 Cal. App. 365 [275 P. 477] and *Oakes* v. *Fernandez*, 108 Cal.App. 2d 168 [238 P.2d 641] as authority for their contention that the attorney's fees should have been allowed. These cases have no application to the question here involved for in each of them the question of whether attorney's fees were actually incurred was not raised.

As their second assignment of error appellants argue that "Where a court finds that defendants' rights under a written contract were subject to defendants' compliance with conditions precedent, concurrent and subsequent, and further finds that defendants failed to perform the required conditions precedent, concurrent or subsequent, and finds plaintiffs never waived any defaults, it is error for the court to find the contract terminated at a later date than that expressly provided for in the written contract." This argument is without merit. The record shows that on October 5, 1951, Thomas Eistrat notified Humiston by letter dated October 4, 1951, which stated in part as follows: "We also inform you that said option agreement of April 28, 1951, which we had made with you has been terminated in accordance with its terms because of your defaults and that the liquidated damages specified therein are now due us and are hereby demanded." At that time Humiston had cut and felled 185,000 board feet of pine timber and it was then on the property. The evidence would not support a finding that the contract was terminated at a date earlier than October 5, 1951. Plaintiffs allege in their sixth cause of action that "pursuant to the terms of said option agreement, plaintiffs on or about October 6, 1951, gave defendant written notice that plaintiffs then elected to exercise their option and then to terminate all defendants' rights, if any there were, for aforesaid defaults of defendants in making payments on said promissory note accepted in lieu of cash as part of the cash payment for the sale of the option." The record shows that after the Eistrats knew of breaches of the contract by Humiston they, on August 15 and September 7, 1951, entered into new arrangements with Humiston.

It is apparent that Humiston had a right to cut timber on the property until the Eistrats elected to terminate the

contract and that this election was effected on October 5, 1951. Title to the lumber cut previous to that date passed to Humiston when it was in fact cut. The agreement expressly provided that title to the timber to be cut, at the time of its felling passed to Humiston.

The third and final contention of appellants is that the contract was terminated at the time it was breached for failure to comply with the requirements of the cooperative agreement with the Forest Service and that the court should have quieted appellants' title to all logs cut and removed from the property thereafter and should have awarded damages for such timber as was removed by Humiston. However, as previously noted, the contract was found by the court to have been terminated by the notice of October 5, 1951, and that until that time the title to the logs cut and removed by Humiston vested in him. The record further shows that the court awarded plaintiffs judgment for the balance due them under the contract for timber purchased by Humiston.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied May 20, 1957, and appellants' petition for a hearing by the Supreme Court was denied June 19, 1957.