[Civ. No. 26545. Second Dist., Div. One. Dec. 27, 1962.]

E. E. SIMMONS, Plaintiff and Appellant, v. CHARLIE R. PATRICK, Defendant and Respondent.

E. E. Simmons, in pro. per., for Plaintiff and Appellant

Wood & Wiggins and Charles E. Wiggins for Defendant and Respondent.

LILLIE, J.—By his complaint, plaintiff originally sought foreclosure of a mortgage on designated real property as well as a deficiency judgment, following sale, for any indebtedness on the promissory note secured by the encumbrance. The note having provided therefor, the court was also asked to award reasonable attorney's fees. The answer interposed the affirmative defense of usury; various offsets, by way of counterclaims, were also asserted. Prior to trial, the parties agreed to a private sale of the encumbered premises and an impounding of the proceeds pending the court's ultimate determination of the sums (if any) due plaintiff as a result of the subject matter of the litigation.[1] The court upheld the defense of usury; it further found in defendant's favor on most of the offsets and gave plaintiff judgment for $90.94. Plaintiff having appeared throughout in propria persona, the court also held that he was not entitled to recover attorney's fees.

Plaintiff has appealed from the judgment and also from an order denying his motion to vacate said judgment and enter another and different judgment (Code of Civ. Proc., § 663). As we interpret such motion, it simply called upon the court to repeat or overrule the former ruling on the same facts. The order is, therefore, nonappealable and the appeal therefrom must be dismissed. (*Simmons* v. *Santa Barbara Ice etc. Co.*, 162 Cal.App.2d 23 [327 P.2d 141].)

For several years prior to 1956, the parties engaged in numerous business transactions which could be fairly classified

---

[1]Despite the provision for impounding, it appears that $22,914.69, proceeds of the sale, was admittedly paid to plaintiff during the pendency of the action.

in the main as joint ventures. Defendant at the time in question was the manager and majority stockholder of Telephone Supply Corporation which bought and sold telephone and electronic equipment. Plaintiff, an engineer by profession, dealt in investments and the promotion of small business organizations. He would advance money to defendant's corporation; merchandise would thereafter be purchased, sold at a profit and the profit shared between the parties.

On January 19, 1956, the parties executed an agreement ostensibly to clarify the account then outstanding by a consolidation of all prior transactions. Purportedly it constitutes an agreement by defendant to purchase designated equipment valued at $53,622.67, and then in defendant's possession, at the rate of $2,000 or more per month. The document provides for interest on the unpurchased amount of merchandise at one percent per month, there being a further proviso that "Simmons will reduce interest from 1% per month to 10% per year if all merchandise is purchased by June 10th, 1956." The instrument also recites: "If note payments are later than the 15th of any month, a penalty of $100.00 will be charged and deducted from the payment by Simmons." Of still further significance is the recital that the agreement is "for the purpose of concluding all of the various transactions listed below" which include "note" and other ventures.

Subsequently, and pursuant to the above agreement, cash payments in the total sum of $18,795 were concededly made to plaintiff.[2] In December of 1956, for the stated purpose of "further simplifying our previous agreement" and "to offer a more practical and satisfactory form of security," the subject note and mortgage were executed. The note called for monthly $2,000 payments.

There is a conflict in the evidence regarding the circumstances attending the preparation and execution of these instruments. Plaintiff claimed that defendant prepared the note and included interest at the rate of one percent per month—admittedly usurious. He further testified that he subsequently changed the interest rate to .833 percent per month in defendant's presence and with his consent. Defendant, on the other hand, testified that he prepared the note at plaintiff's insistence; that the parties thereafter went to a notary public before whom it was signed. In 1959, according to the defendant, he had occasion to be in plaintiff's home—

---

[2]Merchandise valued at $416.04 was also transferred to plaintiff by defendant during the months following the January agreement.

"trying to compromise this deal out and work out some solution for both of us." He noticed that plaintiff "was computing the mortgage at 10%, so I asked him what happened to the 1% a month, or 12% a year. He said, 'Well, it had been changed.' I said, 'Who changed it?' He said, 'I did.' "

The trial court determined that the agreement of January 1956 was intended by the parties to be a note and was further intended to provide for the repayment to plaintiff by defendant of the agreed balance due on their prior transactions. The court also found that the note and mortgage of the following December were given by defendant to plaintiff, and intended by each of said parties, as a renewal of the purported agreement of the previous January. In its memorandum decision the trial court noted that the amount of the January agreement was stated to be $53,622.67 and the principal of the note sued upon was $39,622.50. Since merchandise of the value of $416.04 had been transferred, and cash payments totalling $18,795 (inadvertently stated to be $18,975) paid, to plaintiff during the intervening months, there was a balance in December of $34,411.63 (erroneously stated to be $34,321.63). Plaintiff, when cross-examined, could not satisfactorily explain the difference of $5,000 approximately between the balance in principal and the amount of the note:

"Q. Would it surprise you, Mr. Simmons, if this represented interest at 1% on the unpaid balance of the $53,000 figure? A. No.

"Q. As a matter of fact it does, doesn't it, Mr. Simmons? A. I don't know. I would have to compute it."

The trial court understandably concluded that both agreements were tainted with usury, preventing the recovery by plaintiff of any interest thereon. It additionally found that merchandise, valued at $11,226, was delivered to plaintiff by defendant, further reducing the amount of the indebtedness. A balance of $23,185.63 was thus left. Since the proceeds of the sale (admittedly paid to plaintiff) aggregated $22,914.69, plaintiff was entitled to a judgment for $270.94—not $90.94 as erroneously determined. Finally, attorney's fees were denied in view of plaintiff's admission that he did not employ an attorney in connection with the case.

Article XX, section 22, of the state Constitution, adopted in 1934, fixes the maximum rate of interest that may be charged on loans of the type here found to be involved at 10 per cent per annum. The Usury Act (Deering's Gen. Laws, 1954, Act 3757), in section 2, provides that if excessive interest is

provided for in a transaction, the entire interest is void. According to the facts found to be true, the note of December 19, 1956, bore interest at the rate of one per cent per month at the time of its execution and delivery.

In determining whether this, and other findings, are supported, the usual appellate rules prevail. (*Janisse* v. *Winston Inv. Co.*, 154 Cal.App.2d 580 [317 P.2d 48, 67 A.L.R.2d 225].) ▇ If there is any substantial evidence or any reasonable inference from the evidence to support the findings, the appellate court cannot substitute its judgment for that of the trial court. (*Brocke* v. *Naseath*, 134 Cal.App.2d 23 [285 P.2d 291, 51 A.L.R.2d 1083].) ▇ It is a question of fact as to whether a particular transaction is or is not usurious. (*Middlekauf* v. *Vinson*, 106 Cal.App.2d 204 [234 P.2d 742].) ▇ Where the form of the transaction makes it appear to be nonusurious, it is for the trier of the fact to determine whether the intent of the contracting parties was that disclosed by the form adopted, or whether such form was a mere sham and subterfuge to cover up a usurious transaction. (*Martyn* v. *Leslie*, 137 Cal.App.2d 41 [290 P.2d 58].) ▇ The trial court may look beyond the form of the transaction and ascertain its substance. (*Batchelor* v. *Mandigo*, 95 Cal.App. 2d 816 [213 P.2d 762].)

Contrary to the above rules, plaintiff argues in extenso that certain findings are not supported by the evidence; basically, such argument is premised on the assumption that defendant's version of the facts is false and his own contrary testimony is true. ▇ It seems to be suggested that defendant perpetrated a fraud by secretly inserting a usurious rate of interest in order to avoid payment of any interest at all—in the absence of any fraud, of course, the parties to a usurious transaction are not *in pari delicto*. (*Heald* v.*Friis-Hansen*, 52 Cal.2d 834 [345 P.2d 457].) And in his reply brief plaintiff complains, quite bitterly, that he was the victim of a conspiracy between defendant and the latter's counsel. Such strictures are wholly unwarranted and quite inexcusable. On the other hand, it appears that plaintiff derived a portion of his income from loans of money and admitted to a working knowledge of the usury laws:

"Q. Have you been familiar for some years with the usury laws of the State? A. Well, I have been recently. I wouldn't say I have been at all times during the transactions which occurred, which you had mentioned.

"Q. Well, let's say within the past five years have you been particularly aware of them? A. How long was five years ago?

"Q. Let's go back to approximately 1956, Mr. Simmons. A. Well, I have been aware of usury laws further back than that, but not to the extent that I knew all of its ramifications, should I say."

Without further recital of the facts, the inference is clearly deducible that plaintiff had ample warning of the usurious nature of the transaction which, even though denominated a "sale," would not necessarily be without the purview of the usury laws of this state.

Plaintiff argues a number of other matters in his criticism of the above finding. For example, he says that the defendant took active steps to make the note usurious and is therefore estopped to raise the defense that the agreement was illegal to that extent. In advancing this and other contentions, plaintiff is simply laboring under a misconception as to the power of this court. He says that he produced a preponderance of the evidence. The question, which side met the proper burden of proof, was for the trial judge. An appellate court decides questions of law only; it does not weigh the evidence or judge the credibility of witnesses. One point, however, calls for specific comment. Plaintiff contends that the subject note was ratified by the parties' action in consenting to a sale of the real property designated in the mortgage and the payment of the proceeds to plaintiff. But that applied only to the principal of the obligation and not the interest thereon. This it was perfectly proper to do since the principal of an usurious transaction is recoverable in law. (*Campbell* v. *Realty Title Co.*, 20 Cal.2d 195 [124 P.2d 810].)

 The next challenged finding relates to the allowance of an offset of $11,226 representing merchandise transferred to plaintiff. It is contended that there is a variance between the pleading and proof as to the time of such transfer, that there is no conclusion of law with respect thereto, and the claimed offset was not made a part of the pretrial order. There is merit to none of these contentions. It is statutory law that, "No variance between the allegations in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (Code of Civ Proc., § 469.) There has been no showing of any prejudice. Furthermore, the evidence relating to the offset was

received either without objection or without proper grounds for the objection interposed, and leave to amend (to conform to proof) could have been granted. Second, the trial court in Finding X expressly found that the offset existed and by its conclusion of law (No. V) in effect concluded that the offset was allowable. Certainly a reversal is not warranted on the ground asserted. (Cal. Const., art. VI, § 4-1/2.) Finally, with respect to the pretrial order, there is some merit to plaintiff's position. ▮▮▮ But sometimes it is required that the effect of a pretrial order be not so restrictive that the power of a trial court to do justice between the parties is completely abrogated. (*Atkins* v. *Atkins*, 177 Cal.App.2d 207 [2 Cal.Rptr. 104].) ▮▮▮ The present pretrial order states that one of the ultimate issues of fact is the determination of the amount due upon the subject note. As mentioned above, also, the evidence was received without any proper objection. Under all the circumstances, no prejudice appears.

▮▮▮ There is no merit to plaintiff's next contention that defendant, as an individual, was not entitled to the offset allowed. Plaintiff argues that since payments were apparently made by Telephone Supply Service, of which defendant was majority stockholder, in his individual capacity defendant should not be credited therefor. It appears to be the settled rule that if someone pays usurious interest at the borrower's request for and on behalf of the borrower, it does not change the fact that the usurious interest has been paid by the borrower directly. (*Aspeitia* v. *California Trust Co.*, 158 Cal. App.2d 150 [322 P.2d 265].) Logically, therefore, the same rule should apply to credits by way of offset, particularly in view of the *alter ego* nature of the corporation.

There is also no merit to the claim that the offset is barred by the statute of limitations. (Code of Civ. Proc., § 339, subd. 1.) The note sued upon was properly found to be a renewal (not a cancellation) of the January 1956 agreement. ▮▮▮ " 'Where the lender brings an action to recover an indebtedness, none of the usurious payments, nor payments on renewal notes, are barred by limitation so as to preclude their use in the reduction of the principal debt.' " (*Shirley* v. *Britt*, 152 Cal.App.2d 666, 670 [313 P.2d 875].)

▮▮▮ Finally, plaintiff asks us to disregard recognized decisional law which forecloses an award of attorney's fees where in fact (as here) no attorney was employed. (*Eistrat* v. *Humiston*, 150 Cal.App.2d 391 [309 P.2d 925].) Says plaintiff: "The clear implication of the judgment is that the plain-

tiff herein is to be discriminated against and restricted in his legal rights because he has not paid a member of a private group a sum of money and relinquished the control of the lawsuit to such member. This decision is clearly immoral, unjust and not lawful." He contends that *Bank of Woodland* v. *Treadwell,* 55 Cal. 379, should be overruled; however, "It is not for us to inquire what the law ought to be when the Supreme Court has emphatically informed us what the law is." (*Orange County Water Dist.* v. *City of Riverside,* 173 Cal.App.2d 137, 165 [343 P.2d 450].)

No other points require discussion.

The attempted appeal from the order (denying motion to vacate) is dismissed; the judgment is modified to provide that plaintiff have and recover from defendant the sum of $270.94, together with costs of suit, and as so modified is affirmed. Defendant will recover costs on appeal.

Wood, P. J., and Fourt, J., concurred.

A petition for rehearing was denied January 24, 1963, and appellant's petition for a hearing by the Supreme Court was denied February 20, 1963.