Filed 1/2/24  Hart v. Hart CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| BETH MAE HART,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ROBERT HART,<br><br>　　　Defendant and Appellant. | F084689<br><br>(Super. Ct. No. VCU286706)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Robert Hart, in pro. per., for Defendant and Appellant.

Williams, Brodersen, Pritchett, Burke and Ruiz, Steven R. Williams, for Plaintiff and Respondent.

-ooOoo-

This case arose from a loan made by Robert and Elizabeth Hart to Beth Hart. Beth Hart subsequently initiated this action on grounds the terms of the loan were usurious. The matter proceeded to a jury trial on issues related to the usurious interest rate applicable to the loan. The jury reached a verdict in favor of Beth Hart. Robert Hart appeals. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Robert and Elizabeth Hart served as trustees of a family trust called Diversified Management. On March 8, 2016, Robert and Elizabeth Hart entered into a loan agreement with Beth Hart.[1] Pursuant to the loan agreement, Diversified Management loaned Beth the sum of $ 29,000, payable over a five-year term ending on March 8, 2021. The loan agreement provided, in part: "The balance of any one month will accrue interest at a rate of 1½% (one and one half %) per month (approx. 18% annually). Interest accrued from the previous month will be added to the balance owed on the first of the next month."

Beth signed a promissory note on March 7, 2016. The note provided, in part: "I promise to pay to Diversified Management (a family trust dated 12-29-2007), Robert and Elizabeth Hart co-Trustee[s] or assignee, the sum of Twenty Nine Thousand Dollars ($29,000.00) or whatever the balance of the loan is at such time, including interest, by March 8th, 2021. Interest on this Note's balance will be calculated at 1½% (one and one half percent) per month on any unpaid balance on the first of each month." The note further provided: "Monthly interest charges of 1½ % of current balance will be added to the balance at the first of each month, thereby increasing the balance of this Note."

In addition, the promissory note stated: "If this note is not paid when due on March 8th 2021, the undersigned promises to pay in addition all costs associated with

_____

[1] For purposes of clarity, we will refer to the parties by their first names. No disrespect is intended.

collection and reasonable attorney's fees incurred on account of such collections, whether or not suit is filed hereon." The loan and promissory note were secured by a home owned by Beth on Sycamore Drive in Three Rivers (Sycamore property). Beth signed and recorded a deed of trust on the Sycamore property and provided the deed of trust to Robert and Elizabeth as security for the loan and promissory note.

In December 2016, Robert and Elizabeth entered into another agreement with Beth, pursuant to which Elizabeth would manage Beth's Sycamore property, which served as an AirBnB rental. The new agreement, referred to by the parties as the "management agreement," contemplated that part of the AirBnB rental proceeds would be deposited into a bank account controlled by Robert and Elizabeth. The proceeds were to be used to pay expenses related to the Sycamore property/AirBnB business and "to pay down the balance of the Note dated 3-7-16." The management agreement further contemplated that Robert and Elizabeth would lend additional money to Beth as needed to pay residual bills, with any such amounts to be added "to the existing Note dated 3-7-16," "thereby increasing the amount owed on said Note and [accruing] interest at 1.5% monthly."

In December 2016, Robert and Elizabeth added $6,694 to the original amount borrowed by Beth, which monies were used to pay bills connected to the Sycamore property/AirBnB business. The management agreement was dissolved in November 2017. Thereafter, Robert and Elizabeth appropriated the sum of $5,648, the balance of the AirBnB-related bank account controlled by them, and credited it towards the accrued interest (calculated at the rate of 1.5 percent per month) on the loans they had made to Beth.

Beth engaged counsel at that point. On March 22, 2018, Beth's counsel sent a letter to Robert and Elizabeth advising them that the loans they had made to Beth violated the usury provisions of the California Constitution. The letter addressed to Robert and Elizabeth stated, in part:

3.

"As you are aware we represent [Beth] who has referred to us the issue of the loan you made to her in 2016. Due to the terms set forth in the promissory note the transaction was and is unlawful. The fact that interest is being charged at the compounded rate of 1.5% per month (effectively 19.56% per annum) constitutes usury.

"The California Constitution, Art. XV, § 1 provides that the interest rate on a loan of any money is 7 percent per annum, but it is competent for the parties to any loan of money to contract for a higher rate of interest as specified. Thus, parties to any loan of money for use primarily for personal, family, or household purposes may nevertheless contract in writing for an interest rate not exceeding 10 percent per annum. In this context, however, a loan is not deemed for use primarily for personal, family, or household purposes if its proceeds are used primarily for the purchase, construction, or improvement of real property.

"Parties to any loan of money for use other than primarily for personal, family, or household purposes may also contract in writing for an interest rate other than the 7 percent rate, if the rate does not exceed the higher of (a) 10 percent per annum or (b) 5 percent per annum plus the rate established by the Federal Reserve Bank of San Francisco on advances to member banks. For the purposes of determining the maximum rate permitted under (b), the rate used in the computation is that which prevails on the 25th day of the month preceding the earlier of (1) the date of execution of the contract to make the loan, or (2) the date of making the loan [Cal. Const., art XV, § 1(2)]. In your case the Federal Reserve rate was 1.0%, thus the highest rate of interest you could have arguably charged is 10%.

"Any agreement or contract of any nature that provides for an interest rate greater than the maximum rate allowed under Cal. Const., art. XV, § 1, or that provides for compounded interest or interest on interest, is null and void as to any agreement or stipulation to pay interest. When a loan is usurious the creditor is entitled to repayment of principal only."

On March 27, 2018, Robert responded in writing to the March 22, 2018 letter from Beth's counsel. In his response, Robert stated in part:

"We are hopeful that you can convince [Beth] to either sell or refinance the property and pay us off in full before we are forced to call the Note. We are no longer interested in helping her with her financial difficulties.

4.

"Our loan to Beth is a private loan between private people secured by real property. Beth Hart is fully aware of all contracts she signed and agreed to and further ask[ed] us for another loan when she ran into more financial difficulties. That is why we lent her more money and entered into the Management contract dated 12-26-16 (attached) in an effort to keep her finances solvent while we are invested in the venture.

"We will be expecting her to comply with all contracts, Notes and agreements that we have with her, including the interest rate she agreed [to]. We would have never entered into the agreement for any less interest. We wish to avoid suing her for breach of contract on the management contract, so we are hopeful she can pay us off and go about her way.

"Enclosed herein is a full accounting of how much she currently owes. We are also including a copy of the Management Contract signed 12-26-16, along with her hand written instructions dated 12-26-16 to apply moneys collected to pay down the Note.

"Your contention that our personal loan to her is illegal and subject to the California Constitution is in error. Of course, the only entities subject to the CA Constitution is government and consenting commerce. There is no mechanism of due process or law that could force private people to be subject to the jurisdiction of the CA Constitution absent consent. We are not denying that the CA Constitution has the verbiage you refer to. We are expressly claiming that no proof exists that we or the loan agreement is subject to the CA Constitution."

Subsequently, on January 21, 2021, Robert sent another letter to Beth's counsel. The letter stated, in part: "As you are aware, the loan to [Beth] [was] referenced by Deed of Trust and promissory note dated March 7th 2016. [¶ ] We are informing you that we expect payment in full on March 8th, 2021. If full payment of $75,902 is not received on or before March 8th 2021[,] we will proceed with foreclosure. Please be aware that according to our agreement, if this goes into litigation, Beth Hart has agreed to pay all legal fees required to foreclose and collect."

In February 2021, Beth sent a check for $5000 to Robert and Elizabeth, which check was received by Robert and Elizabeth on February 13, 2021. Robert acknowledged receipt of the $5,000 check in a letter dated February 23, 2021, to Beth's attorney. In the letter, Robert stated, in part: "We have subtracted the $5,000 payment

5.

from the ledger balance of the account.… The payoff amount on March 7th 2021 will be $70,887."

In March 2021, Beth sent a check for $3,500 to Robert and Elizbeth. In a letter dated March 29, 2021, Robert acknowledged receipt of the $3,500 check and represented he had applied the $3,500 check amount to the accrued interest on the loan. At this point, Robert unilaterally changed the interest rate on the loan to 10% per annum (simple interest) and applied it retroactively to the date of inception of the loan (March 2016). Thus, Robert's March 29, 2021 letter included a ledger showing an outstanding principal balance of $35,854 and an outstanding interest balance of $3,236, for a total loan balance of $39,090, as of March 28, 2021.

On April 13, 2021, Beth sent a check for $2,000 to Robert and Elizabeth. On April 15, 2021, Beth filed a "complaint for recovery of usurious interest and for declaratory relief," initiating the instant matter. (Unnecessary capitalization omitted.)

Thereafter, on April 21, 2021, Robert and Elizabeth recorded, through a foreclosure service, a notice of default and election to sell under deed of trust, with Tulare County. The notice declared a default of "$77,538.98 as of 4/20/2021." Beth's brief represents the default figure was "based on an interest calculation of 18% compounded monthly."

On July 21, 2021, Robert and Elizabeth sent a formal "payoff demand" to Beth, issued by a foreclosure service as a prelude to initiating a trustee's sale of the Sycamore property pursuant to the duly recorded deed of trust for that property. Attached to the payoff demand was a ledger documenting that the aforementioned checks for $5,000, $3,500, and $2,000 sent by Beth over the period from February-April 2021, had been cashed and applied to the interest that had accrued on the loan. The ledger reflected a total outstanding principal balance of $35,854 and a total outstanding interest balance of $2,726, for a total outstanding loan balance of $38,580. The ledger reflected an interest

6.

rate of 10% per annum (simple interest) starting from the inception of the loan in March 2016.

In September 2021, at the summary judgment stage of the instant matter, Robert and Elizabeth noted in papers filed with the court, that they had not in fact cashed Beth's aforementioned checks to them in the respective amounts of $5,000, $3,500, and $2,000. Robert and Elizabeth eventually returned the checks to Beth's attorney on August 22, 2021, on grounds the checks were made out to Diversified Management rather than to Robert and Elizabeth individually. The checks were then reissued for the original amounts, with the original payment dates, in the names of Robert and Elizabeth. Robert and Elizabeth did not negotiate the replacement checks either and returned the replacement checks to Beth's attorney as well. Thereafter, on September 30, 2021, Beth sent Robert and Elizabeth a check in the amount $11,000; this check was also not cashed.

On September 27, 2021, Robert and Elizabeth, through a foreclosure company, recorded an updated notice of default and election to sell under deed of trust, with Tulare County. The notice declared a default amount of "$51,084.98 as of 9/08/2021" This default amount reflected an applicable interest rate of 10% per annum (simple interest), as well as the fact that Robert and Elizabeth did not cash the above-described check payments that Beth had made at various points in 2021 (that is, the check amounts were not reflected in the default balance).

On November 4, 2021, Robert and Elizabeth filed a "verified cross complaint for compensatory and punitive damages for breach of contract, promissory fraud, abuse of process." (Unnecessary capitalization omitted.) Robert and Elizabeth dismissed their cause of action for breach of contract prior to trial. As for Beth's complaint, Elizabeth was dismissed as a defendant under the operative complaint on April 7, 2022, with Robert and Diversified Management remaining as defendants.

Beth's operative complaint and the remaining claims in the cross-complaint were tried to a jury in a two-day trial on June 1-2, 2022. After the parties rested, the court

granted Beth's motion for nonsuit as to defendants' cross-complaint. As to Beth's claims, the trial court, among other instructions, instructed the jury, without objection, as to numerous pertinent facts derived from defendants' discovery responses and verified pleadings. The jury found, on a special verdict form, that: (1) defendants loaned money to Beth pursuant to a written agreement; (2) the interest rate specified in the written agreement exceeded the authorized maximum rate of 10% per annum; (3) defendants intended to enter into the loan agreement at an interest rate in excess of 10% per annum; (4) the loan was absolutely repayable; (5) Beth paid $5,648 in interest between March 8, 2016 and April 15, 2019; (6) Beth paid $10,500 in interest between April 16, 2020 and April 15, 2021; and (7) Beth paid $11,000 in interest between April 15, 2021 and the time of trial.

On June 3, 2022, the court entered judgment in favor of Beth. The judgment reflected that defendants' loans to Beth were usurious and that Beth was entitled to a credit of $27,148 against the total principal amount of $35,854. The $27,148 amount credited against the principal was based on the payments tendered by Beth ($5,648 + $10,500 + $11,000). The judgment further provided that Beth was entitled to attorneys' fees and court costs. The same day, Beth filed a motion for attorneys' fees and costs. The trial court determined: "Here, Plaintiff is the prevailing party pursuant to the jury's findings and verdict in her favor. She is entitled to attorneys' fees pursuant to the contract [promissory note]." The court granted Beth's motion and awarded $68,185.25 in attorney fees and $1,906 in costs. Robert appealed.

## DISCUSSION

### I.  Plaintiff Had Standing to Sue

Robert argues that Beth did not have "standing to sue" because she "was only being charged 10% simple interest at the time the Complaint was filed." He further contends Beth was never injured and did not allege an injury in her complaint. He concludes: "The Respondent should have never been allowed to sue the Appellant for

this one reason alone [i.e., a lack of injury], not to mention that the Appellant voluntarily lowered the interest rate of the loan to 10% simple interest 30 days before the Complaint was served." Robert does not support his contentions with citations to applicable and relevant legal authorities. We reject his contention that Beth lacked standing to bring the instant matter.

### A. Legal Framework

Miller & Starr outlines the history of usury laws: "There was no usury by common law and, prior to the advent of legislation, money was an unrestricted commodity subject to the law of supply and demand. The laws of usury are a fairly recent commercial development and are purely and solely creatures of modern statutory and state constitutional provisions." (Miller & Starr, 11 Cal. Real Est. (4th ed. 2023) § 37:2, fn. omitted.) "The first regulation of maximum interest charges in California was the Usury Act adopted in 1918 as an initiative measure, which established the maximum rate of 12 percent per annum." (*Ibid*, fn. omitted.) "A constitutional amendment in 1934 reduced the maximum interest rate to 10 percent per annum and provided for certain exemptions for institutional lenders." (*Ibid*, fn. omitted.) "In 1979, during a period of historically high market rates of interest, the people of the state of California adopted another initiative measure (Proposition 2) that amended the Constitution [Cal. Const. art. XV (Amend.), effective Nov. 7, 1979] to establish new usury limits and to provide for a much broader range of exemptions from the application of the usury limitations." (*Ibid*, fns. omitted.)

"The current usury limitations applicable to nonexempt loans by nonexempt lenders are now 10 percent per annum for some loans, and a fluctuating rate equal to five percent over the Federal Reserve Bank discount rate for other loans, which may exceed 10 percent per annum." (Miller & Starr, 11 Cal. Real Est. (4th ed. 2023) § 37:2.) Here, the jury was instructed, with regard to the applicable maximum interest rate on the loan at

issue, under California law, as follows: "As between the plaintiff and defendants the maximum authorized rate of interest which can be charged on a loan is 10% per annum."

"The essential elements of usury are: (1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 798.)

"The usurious character of a transaction is determined by the amount agreed to be paid, agreed at the time of making the loan. 'The usurious character of the contract is not determined by the amount of interest the borrower has paid thereon, but by the amount of interest he has agreed to pay on his said indebtedness. He may not have paid a dollar of interest on his indebtedness yet if the contract calls for a greater rate of interest than that permitted by the statute, the transaction is usurious, and no interest can be collected thereon.' " (*Abbot v. Stevens* (1955) 133 Cal.App.2d 242, 248-249 [" 'The intent actually to get excessive interest, as a controlling element, is the intent as it existed as of the time when the agreement was made.' "].)

Moreover, "[i]t is the rule, and has been so held many times in this state, that intent to execute a usurious rate of interest is conclusively presumed from a note or instrument which clearly shows on its face that it is usurious, and no evidence of intent or lack of such intent is required." (*Denny v. Hartley* (1957) 154 Cal.App.2d 304, 306; see *Martin v. Ajax Construction Co.* (1954) 124 Cal.App.2d 425, 432 ["Intent to exact a usurious rate of interest is conclusively presumed from an instrument which clearly shows the character of the agreement and no evidence of intent or lack of same is required."]; *Paillet v. Vroman* (1942) 52 Cal.App.2d 297, 306 ["in a case such as this where upon its face the promissory note discloses that the interest charged does in fact violate [the] law, intent is immaterial"].)

In addition, "[w]hen an instrument is usurious no interest whatsoever is recoverable by the usurious lender." (*Maze v. Sycamore Homes, Inc.* (1964) 230 Cal.App.2d 746, 755; *Strike v. Trans-West Discount Corp.* (1979) 92 Cal.App.3d 735, 744 ["no interest whatsoever can be claimed by the usurious lender"]; *Verbeck v. Clymer* (1927) 202 Cal. 557, 562 ["the obligation to pay interest is void" where the transaction is usurious].) Despite a usurious transaction, the creditor may recover the principal of the loan. (*Simmons v. Patrick* (1962) 211 Cal.App.2d 383, 389 ["the principal of [a] usurious transaction is recoverable"].)

### B.    Background

At the motions in limine hearing in this matter, the trial court addressed the issue of standing. The trial court stated: "Defendant can't argue that the plaintiff lacks standing. I mean, there's kind of the assertion here that there's some issue on standing. [¶] In usury cases, I think the law is pretty clear that you don't have to pay the claim to offer the defense. You can still raise usury as a defense without having paid." The court added: "But you can't say that they don't have the standing to bring the claim because I think that the usury laws are clear that you can still bring the claim whether you paid or not."

The trial court next addressed a motion in limine filed by Beth with regard to Robert's claim that he had unilaterally reduced the interest rate on the loan to 10% simple interest, thereby precluding any injury to Beth. The court stated: "[Plaintiff seeks to] prevent defendant from asserting that the unilateral modification takes the loan out of the usury statutes, essentially, Mr. Hart, who in the case has indicated he reduced the interest rate to 10 percent. And the Taylor vs. Budd[2] case is almost 90 years old, but it says pretty clearly that changing the term[s] after the loan [was effectuated] did not waive usury. So I think the law on that is clear. I've seen no other law to the contrary." At that

---

**2**    *Taylor v. Budd* (1933) 217 Cal. 262.

11.

point, Robert interjected: "Excuse me. I didn't lower the interest rate to claim that it wasn't usury. I lowered the interest rate to prevent a lawsuit. If they thought that that was usury, then I thought, well, I'll just go to whatever they think is right because – so I charged 10 percent just to save a lawsuit. But after I changed it to 10 percent, then they came back and filed a complaint 30 days later anyway. But I did not change the interest rate to claim that I wasn't subject to usury." The trial court responded: "Okay. Sounds like there's no real argument on that one. I'll grant it."

The court granted Beth's motion in limine precluding Robert from arguing that his unilateral, retroactive modification of the interest rate on the note to a 10% per annum rate, effectively nullified the injury (that is, usury) alleged by Beth.

### C. Analysis

Here, the terms of the loan, at its inception, were set forth in the promissory note. The promissory note provided for interest at a compounded rate of 1.5% per month (effectively 19.56% per annum). Thus, the promissory note revealed on its face that the loan was usurious. Since Beth was subjected to usurious terms and challenged those terms in the instant lawsuit, Robert's contention that Beth suffered no injury and did not allege any injury in her complaint has no merit. Beth's standing to sue did not hinge on whether she had actually paid usurious interest on the loan.

Furthermore, since the loan was usurious, Robert was not entitled to recover any interest on the loan. The fact that Robert unilaterally changed the interest rate to 10 percent simple interest was of no moment. Beth correctly notes in her brief, "defendants' unilateral retroactive modification of the interest rate … did not cure the unlawful nature of the transaction." Beth points out that, while "there is no question that a usurious transaction can be settled and compromised by the parties without litigation," "an enforceable compromise requires consideration to the borrower." Beth posits that "[a] mere waiver of the excess interest, even if agreed to, is not consideration to the borrower since it is illegal in any event."

12.

Beth's argument is supported by *Taylor v. Budd*, *supra*, 217 Cal. 262, which clarifies that a compromise in which the lender merely relinquishes all claims for *illegal* interest, is "totally lacking in consideration." (*Id*. at p. 266.) We conclude that Robert's unilateral, retroactive modification of the interest rate applicable to the loan, to a rate of 10 percent per annum simple interest, was invalid and did not serve to roll back the usurious terms that took effect at the inception of the loan. Accordingly, Beth had standing to challenge the usurious terms of the loan, notwithstanding Robert's unilateral modification.

## II.     Robert's Theory of Unclean Hands Has No Merit

Robert argues that Beth acted unethically in tendering checks as payment for the loan at issue because her plan all along was to tender the checks and then sue for recovery of usurious interest and damages under the usury laws. Robert contends that "Respondent's unethical conduct of attempting to lure the Appellant into a usurious interest lawsuit" means she had unclean hands and she should therefore be held to pay interest on the loan at issue. Robert does not cite any applicable and relevant authority in support of his claims.

Robert appears to be arguing that Beth is somehow estopped from claiming she does not owe interest pursuant to the agreed upon loan terms or Robert's unilateral modification thereof. However, estoppel is not triggered when a borrower makes payments with knowledge of the usurious nature of the underlying transaction. Rather, when a borrower voluntarily pays the usurious interest without objection, it is presumed the payment was an involuntary act. Our Supreme Court has explained: "The theory of [the usury] law is that society benefits by the prohibition of loans at excessive interest rates, even though both parties are willing to negotiate them. Accordingly, 'voluntary' payments of interest do not waive the rights of the payors. 'Payments of usury are not considered voluntary but are deemed to be made under restraint.' " (*Stock v. Meek* (1950) 35 Cal.2d 809, 817 [" 'The parties to a usurious transaction are not to be regarded

as *in pari delicto*.' "].)  Since the payments are viewed as being made under compulsion, the payor is not estopped from challenging the underlying usurious transaction in an action against the lender.

Robert also claims that Beth engaged in "abuse of process" by filing a lawsuit seeking the return of usurious interest payments made via checks, despite the fact that Robert had not cashed those checks.  Robert had raised this "abuse of process" issue in the trial court as well.  Specifically, the trial court had granted, at the motions in limine hearing in this matter, a motion in limine brought by Beth "to prevent [Robert] from arguing abuse of process."  The trial court explained:  "Abuse of process is the use of the legal system to accomplish a purpose for [which] it was not designed.  Here I think we have usury statutes, and there's a contemplation in that statute that they can be enforced through the legal process.  So I think filing this suit is well within the statutory scheme in civil litigation."  The court concluded:  "I'm going to grant that motion.  I don't believe abuse of process is something that can be correctly argued in this suit."  At that point Robert asked:  "Are you saying I can't argue my counterclaim of abuse of process in this trial?"  The court responded:  "That's exactly what I'm saying, sir."  Robert challenges the court's ruling.

Robert has not made reasoned arguments or provided citations to applicable authority in support of his claim that Beth had engaged in "abuse of process."  We therefore need not further address this claim.  (See *Cahill v. San Diego Gas & Electric Co*. (2011) 194 Cal.App.4th 939, 956 [" 'Appellate briefs must provide argument and legal authority for the positions taken.  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].)

## III.    Usury Prohibitions of the California Constitution Apply to Private Loans

Roberts argues the loan transaction at issue was not subject to the usury prohibition in article 15 of the California Constitution, because the loan agreement was

made between private individuals for private purposes. More specifically, Robert argues: "The CA Constitution is not a document that dictates rules for private people to live by. The CA Constitution and all state Constitutions were written to organize state governments. There was nowhere in the loan documents that claimed 'the parties agreed to be subject to the laws of the State of California' or any other hidden terms. The contracts are the law of the case." Robert does not provide any authority for his broad claims. We reject Robert's contention that the usury prohibition of the California Constitution did not apply here because the loan was between private people for private purposes.

The trial court granted an in limine motion brought by Beth to preclude defendants from asserting they were not bound by the California Constitution. The court explained: "[T]he California Constitution is] one of the foundational laws of our state, and I have not seen any legal authority that indicates that it only applies to businesses or you can somehow opt in or out of that." We detect no error in the trial court's ruling.

The usury prohibitions of the California Constitution are encompassed in article 15, section 1. Article 15, section 1, by its terms, applies to "any loan" that is transacted in the state. (See Cal. Const. art. 15, § 1(1), (2).) Furthermore, the California Constitution applies to individuals and not just to government entities. For example, the right to privacy enshrined in article 1, section 1 of the California Constitution "protects against invasions by private citizens as well as by the state." (*Chantiles v. Lake Forest II Master Homeowners Assn.* (1995) 37 Cal.App.4th 914, 923.) Similarly, under the California Constitution, it is settled that threats of private citizens alone may suffice to render a confession involuntary. (See *People v. Brown* (1981) 119 Cal.App.3d 116, 129; see also *People v. Haydel* (1974) 12 Cal.3d 190, 197, 199-202 [refusal by private security guard to allow suspect to see wife rendered statement involuntary].) In addition, some jurists contemplate that "California's free speech clause, which is broader than the federal clause, has no state action limitation but rather ' "runs against the world,

15.

including private parties as well as governmental actors." ' " (*Albertson's, Inc. v. Young* (2003) 107 Cal.App.4th 106, 129-130, conc. opn. of Sims, J.)  Finally, the body of caselaw regarding the usury prohibitions of the California Constitution leaves no doubt that article 15, section 1 applies to private individuals as well as other entities.

## IV.     Contracts Clause of the United States Constitution Does Not Apply Here

Robert argues he should have been permitted at trial to rely on article 1, section 10, clause 1 of the United States Constitution because this provision "was written to protect the rights of the people against government interference in their right to contract freely."  We reject his contention.

The trial court granted a motion in limine brought by Beth to preclude Robert from arguing that article 1, section 10 of the federal Constitution prevented enforcement of state laws on usury.  The trial court stated:  "Specifically, I think Article I Section 10 of the federal Constitution does not prevent enforcement of state laws on usury.  I think Article I Section 10 reserves federal powers, including impairing the right to contract, but also talks about things like maintaining our armies and minting money.  [¶ ]  I know of no legal authorities and I've seen none presented here that indicates that the federal Constitution prevents enforcement of the usury [laws]."  We agree with the trial court.

The United States Supreme Court has explained:  "It is elementary that the subject of the maximum amount to be charged by persons or corporations subject to the jurisdiction of a State for the use of money loaned within the jurisdiction of the State is one within the police power of such State."  (*Griffith v. Connecticut* (1910) 218 U.S. 563, 569.)  The high court further held:  "[T]he contract clause of the Constitution of the United States 'does not give validity to contracts which are properly prohibited by [state law].' "  (*Id*. at p. 571)  In other words, the federal Constitution's prohibition against impairing the obligation of contracts (U.S. Const. art 1, § 10) applies only to contracts lawfully made and not to usurious contracts that violate state law.

16.

## V. Promissory Fraud

After presentation, at trial, of the defendants' case as to their cross-claims, the trial court granted Beth's motion for nonsuit. Robert's cross claim for promissory fraud was extinguished upon the granting of the motion for nonsuit. Robert now challenges the trial court's grant of the motion for nonsuit. For her part, Beth points out: "Appellant makes no citation to the record on this issue and has not presented a reporter's transcript which is necessary to find error in the Court's granting of non-suit at the conclusion of Appellant's case. Appellant is unable to show grounds for reversal." We agree. (See *Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 817 ["We consider all points asserted in this appeal to be forfeited as unsupported by 'adequate factual or legal analysis.' "].)

## VI. Alleged Misrepresentations by Beth's Attorney at Trial

Robert alleges that Beth's attorney "lied to the Jury during closing argument on 6-2-22 by dictating to the Jury his erroneous interpretation of CCP 2074 that payment tendered meant the debt was extinguished." Beth responds as follows: "Appellant makes allegations of counsel making false statements to the jury. First, appellant has not offered evidence in the form of a trial transcript to support his claim. Appellant did not request the presence of a court reporter and there is no transcript for the court to make such a finding even [if] it were a valid issue. Secondly, the statements of counsel to the jury are argument, not evidence. Without a trial transcript Appellant is unable to show grounds for reversal." We agree.

## VII. Trial Court Properly Awarded Attorneys' Fees to Beth

Robert challenges the trial court's award of attorneys' fees to Beth. We affirm.

The trial court's order as to attorneys' fees stated:

"Plaintiff seeks a determination as prevailing party on the contract and the corresponding award of attorneys' fees.

"Civil Code section 1717 provides, in relevant part:

" '**In any action on a contract, where the contract specifically provides that attorney's fees and costs**, which are incurred to enforce that contract, **shall be awarded** either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.' (Civil Code § 1717(a), bold emphasis added.)

"The underlying promissory note states:

" 'If this note is not paid when due on March 8th 2021, the undersigned promises to pay in addition all costs associated with collection and reasonable attorney's fees incurred on account of such collections, whether or not suit is filed hereon.'

"Here, the jury found Defendants lent money to Plaintiff, the interest rate exceeded 10%, that Defendants intended to enter the loan agreement at the interest rate of more than 10%, that the loan was repayable. This meets the elements of usury set out in *Ghirado v. Antonioli* (1994) 8 Cal.4th 791, 798:

" '(1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction.'

"Last, Defendant's cross-complaint was dismissed via Plaintiff's motion for non-suit.

"The judgment entered found the obligation of Plaintiff to Defendants was usurious and that Plaintiff is entitled to a credit of $27,148 against the principal.

"Civil Code section 1717, subdivision (b) provides that 'the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section.'

"In *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876, the court held that 'in deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the

18.

parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by "a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions." '

"Here, Plaintiff is the prevailing party pursuant to the jury's findings and verdict in her favor. She is entitled to attorneys' fees pursuant to the contract."

We detect no error in the trial court's decision to award attorneys' fees.

## VIII. Miscellaneous Arguments

Robert makes additional, tangential claims, which are sprinkled throughout his briefs. These claims are not supported by reasoned argument, citations to the record, and citations to applicable legal authorities. Accordingly, we will not consider them. (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078 ["Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review. The court is not required to make an independent, unassisted study of the record in search of error. The point is treated as waived and we pass it without further consideration."].)

## DISPOSITION

The judgment is affirmed. Beth Hart is awarded costs on appeal. The matter is remanded for determination of Beth Hart's attorney fees on appeal.


SMITH, J.

WE CONCUR:


HILL, P. J.


DE SANTOS, J.

19.